### SCHWARTZBERG et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 13, 1917.)

No. 117.

1. JURY ⬤≫136(6)—TRIAL—CHALLENGES.

Under Judicial Code (Act March 3, 1911, c. 231) § 287, 36 Stat. 1166 (Comp. St. 1916, § 1264), giving, on the trial of any felony other than a charge of treason or a capital offense, 10 peremptory challenges to the defendant, and declaring that, where there were several defendants, the parties shall be deemed a single party for the purposes of all challenges, the defendants are, in view of the common law, which considered several defendants as one party, bound to act as one, and cannot, having disagreed, be allowed the separate right of challenge.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 612, 618.]

2. JURY ⬤≫136(6)—JURY TRIAL—CHALLENGES—DISCRETION OF COURT.

Where there were 14 defendants, and they declined to act together in making peremptory challenges, although Judicial Code, § 287, allowed only 10 challenges, and provided that all defendants should be considered as a single party, it was not an abuse of discretion for the trial court to allow each party one peremptory challenge, and restrict him to that fact, for, while all of the parties did not join in each of the challenges, no party defendant has any right or proprietorship in the several members of the panel, but has only the right to reject members of the panel up to the legal limit.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 612, 618.]

---

· ⬤≫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. CRIMINAL LAW ⬩622(1), 1148—TRIAL.**

The grant of a separate trial to numerous defendants is a matter of discretion, and such discretion can be reviewed only when abused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1380, 1382, 1383, 3050–3052.]

**4. CRIMINAL LAW ⬩622(2)—TRIAL—SEPARATE TRIALS.**

In a prosecution for conspiracy to devise a scheme and artifice to defraud, and for using the mails in connection with a scheme to defraud, where there were many defendants, but the charge against all of them was involved with the criminality of one, the denial of a separate trial was not error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1381.]

**5. POST OFFICE ⬩35—OFFENSES—USE OF MAILS TO DEFRAUD.**

The offense denounced by Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1916, § 10385), declaring that whoever, having devised or intending to devise any scheme or artifice to defraud, shall for the purpose of executing such scheme use the mails, will be punished, is different from the offense of conspiracy, the gist of which is the agreement, and is not to be confounded with the offense known as obtaining money under false pretenses, for the offense denounced is completed by proof of the use of the mails in connection with the scheme to defraud.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55.]

**6. POST OFFICE ⬩35—OFFENSES—USE OF MAILS IN CONNECTION WITH SCHEME TO DEFRAUD.**

Where each defendant used the mails in connection with the scheme to defraud merchants of goods, each is guilty under Criminal Code, § 215, providing that whosoever shall use the mails in connection with a scheme to defraud shall be punished.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55.]

**7. CONSPIRACY ⬩33—OFFENSES—CONSPIRACY TO DEFRAUD GOVERNMENT.**

Parties to a conspiracy to defraud, who did not intend to use the mails in connection with the scheme, in violation of Criminal Code, § 215, are not subject to conviction under section 37 (Comp. St. 1916, § 10201), declaring that, if two or more persons conspire to commit an offense against the United States, they shall be punished.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60.]

In Error to the District Court of the United States for the Southern District of New York.

Joseph B. Schwartzberg and others were convicted, under Criminal Code, § 37, of conspiracy to devise a scheme and artifice to defraud, and under section 215, of using the mails in connection with a scheme to defraud, and Joseph B. Schwartzberg, Joseph Herzberg, Henri P. Alexander, Benedict Radus, and Harry S. Goldman bring error. Reversed on conspiracy counts, and otherwise affirmed.

Writ of error to the District Court to review a judgment of conviction against the plaintiffs in error, who with 9 other defendants were brought to trial under an indictment charging them with a conspiracy under Criminal Code, § 37, to devise a scheme and artifice to defraud, in violation of Criminal Code, § 215, and also in separate counts with direct infringement of the "scheme to defraud" statute, viz. section 215. The general nature of the charge contained both in the single count for conspiracy and numerous counts for the substantive offense was that one Bamberger (a defendant) during several years represented himself to the persons and corporations to be defrauded as a skillful salesman or a person able to procure business, and hav-

ing by such representations obtained some business connection with said persons, he recommended as good customers the other defendants herein. Thereupon Bamberger's victims sold on credit to said other defendants; both they and Bamberger making, when it was thought advantageous, false representations as to their financial position and honest intent. For the goods so sold, payment was substantially never made. In the course of carrying on this scheme, letters were mailed and received. The indictment expressed this substantive offense in 26 counts, on 23 of which (together with the conspiracy count) defendants were brought to trial. Of the 14 defendants, 12 were convicted and 2 acquitted on all the counts; and of those convicted the above-enumerated 5 took out this writ of error.

Walter J. Carlin, of New York City, for plaintiff in error Alexander.

Frank Hendrick, of New York City, for plaintiffs in error Schwartzberg and Goldman.

Andrew Foulds, Jr., of New York City, for all plaintiffs in error.

H. Snowden Marshall, U. S. Atty., and Frank M. Roosa, Asst. U. S. Atty., both of New York City.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Of the assignments of error herein, those will be considered which raise the following questions, viz.: (1) That the defendants were not permitted to exercise the right of peremptory challenge of jurors in the manner prescribed by law. (2) That some at least of the plaintiffs in error should have been accorded a separate trial. (3) That the counts under section 215 do not charge a crime against the United States, and no such offense was proven. (4) That the evidence did not warrant conviction on the conspiracy count.

[1, 2] 1. Section 287 of the Judicial Code gives 10 peremptory challenges to "the defendant" in causes such as this, with the further provision that:

"In all cases where there are several defendants or several plaintiffs, the parties on each side shall be deemed a single party for the purposes of all challenges."

When the 14 defendants were arraigned, they appeared by numerous counsel, who (presumably with the assent of their clients) refused to unite, or act jointly, in respect of choosing a jury. It is not denied, nor doubted, that, had they agreed to speak on this subject as one man, or through one attorney, they would collectively have been entitled to 10 peremptory challenges, and both the letter and spirit of the statute been satisfied.

After the above-noted action, or refusal to act, on defendants' part, the trial judge announced that he would entertain one peremptory challenge for each defendant, or 14 in all, with the result that every defendant had one challenge (if their apparent differences were pressed to their limit), but "the parties" defendant had collectively more challenges than the statute required. Thereupon some defendants peremptorily challenged more than once, and such efforts (not joined in by all) were disallowed.

The assignments of error on this head, substantially assert that either every defendant was entitled to 10 challenges, or that all challenges, not made by them all acting jointly, were illegal. Of the first part of this proposition, it is enough to say that no such asserted right is possible under the statute. It amounts to getting exactly what Congress declared a plurality of defendants should not have. The impracticability of such procedure has been pointed out in State v. Cady, 80 Me. 413, 14 Atl. 940; but it is enough in this case to indicate its illegality.

The idea (at the bottom of the second branch of argument) that any one of several defendants may, by refusing to act jointly in respect of challenges, render the action thereon of his codefendants illegal, has no basis in reason. It assumes that the parties to a jury trial have some kind of right or proprietorship in the several members of the panel, which is but another way of urging that right to select jurors which was finally rejected as unsound in U. S. v. Marchant, 12 Wheat. 480, 6 L. Ed. 700.

The present federal statute (in the respect under consideration) is much older than the Judicial Code, having passed from a statute of 1865 into section 819, Rev. St. (Comp. St. 1916, § 1264). U. S. v. Hall (C. C.) 44 Fed. 883, 10 L. R. A. 323. It certainly enlarged the common law, in that peremptory challenges were given in civil causes (Stone v. Segur, 11 Allen [Mass.] 568), and removed that doubt in respect of criminal trials not involving capital punishment, reflected in the older writers, and many cases (Blackstone, Bk. 4, p. 353; Gray v. Reg., 11 Cl. & F. 427; U. S. v. Shackleford, 18 How. 588, 15 L. Ed. 495). But it did not change nor seek to alter the accepted method of interpreting the word "party," nor the rights of several defendants to the same indictment. Such defendants have always been regarded as one party, there is a legal obligation on them so to act, and the law (absente any statutory change) insists on so treating them. The very decisions relied on by these plaintiffs in error sustain this historical position. State v. Cady, supra; People v. McCalla, 8 Cal. 301; People v. O'Laughlin, 3 Utah, 133, 1 Pac. 653; Cochran v. U. S., 14 Okl. 108, 76 Pac. 672; State v. Jacobs, 106 N. C. 695, 10 S. E. 1031. And see, generally, Thompson & M. on Juries, p. 299 et seq.

It results that the contention becomes this, viz. that a body of defendants (in civil or criminal causes), or any one of them, may, by refusing to act in the manner prescribed by statute and imposed by historic interpretation, render any peremptory challenge impossible, or the exercise of the right by others illegal. Whether in this case the trial judge would have been justified in treating defendants' refusal to act jointly as a surrender or waiver of all peremptory challenges need not be considered; he chose the gentler method of exceeding the statutory limit, and, in favor of the accused, granted to each in severalty a reasonable share of the right they had jointly declined.

This was a proper exercise of discretion, furnishing no ground for complaint, fundamentally because (as above stated) challenge is but the right to reject up to the legal limit, and such right does not inhere in any particular one of a plurality of either plaintiffs or defendants, but in the defendant or plaintiff party considered as a unit. When that

party refused to act as a party, it was not error to save the right by discretionary subdivision.[1]

[3, 4] 2. The principle is not doubted that the grant of separate trials to numerous defendants is a matter of discretion (U. S. v. Ball, 163 U. S. 672, 16 Sup. Ct. 1192, 41 L. Ed. 300), and that the review of discretion is limited to the abuse of that judicial power. It is insisted that the transactions herein considered by the jury were in reality wholly independent, in respect of the defendants (or most of them) other than Bamberger, wherefore the multiplication of incidents of dishonesty produced a false appearance of cumulative testimony, injurious to those who knew Bamberger, but (perhaps) did not even know each other by sight.

No hard and fast rule on matters such as this can be laid down, a finding enough of itself to illustrate the necessity for wide discretion in the trial court. In this particular instance the argument fails, because the whole plan of prosecution, the framework of the indictment, and the finding of the jury is that Bamberger was the deviser, the mainspring and center of the scheme to defraud. One who joined Bamberger's dishonest enterprise, even for a single venture, was a part of the scheme, if his intent was criminal. That some defendants had a very small part in wrongdoing as compared with others does not reasonably entitle them to separate trials, if all the doings of all the defendants' are (by the nature of the charge) to be proven as ejusdem generis. Such was the case here, and, as the event proved, the jury had no difficulty in differentiating the defendants according to their intent, and acquitted some after an unusually prolonged trial.

[5] 3. The objections to the counts of the indictment based only upon section 215, and to the sufficiency of the proof thereunder, require comment only to emphasize the truth that the scheme to defraud denounced by the statute is a crime wholly different from conspiracy, and not to be confounded with the offense known as obtaining money under false pretenses. Emanuel v. U. S., 196 Fed. at 322, 116 C. C. A. 137. The gist of conspiracy is the agreement, the substance of an offense under section 215 is the prosecution of a fraudulent purpose, toward the execution or fulfillment whereof the mail is used. One man may form and accomplish it, with or without assistance; but all who with criminal intent join themselves even slightly to the principal schemer are subject to the statute, although they may know nothing but their own share in the aggregate wrongdoing. One man may render the scheme unitary, though he has the assistance of many others at different times.

[6] In this case, the counts under consideration contained all the essentials of description of Bamberger's fraudulent scheme, and directly charged the substantive offense. The evidence showed what each defendant did toward accomplishing the wrongful end, and there was amply proved association in a continuous course of dishonest conduct; i. e., obtaining goods through Bamberger for which they never

---

[1] It is not without weight that the practice on this trial has been that of this circuit for many years.

intended to pay. This was enough. Blanton v. U. S., 213 Fed. at 323, 130 C. C. A. 22, Ann. Cas. 1914D, 1238.

[7] 4. It is substantially admitted that an inspection of the record does not justify the finding necessary to sustain the conspiracy count, viz. that there was an intent on the part of the conspirators to use the mails in the execution of the scheme. Farmer v. U. S., 223 Fed. 903, 139 C. C. A. 341. While the mail was used quite extensively, and in execution of fraud, the reliance of defendants, when some certainly conspired to defraud, was upon Bamberger's quick tongue and fertility in falsehood. The intent which we held necessary in the Farmer Case was naturally not proven by direct evidence, and could not be inferred beyond a reasonable doubt.

The judgment on the conspiracy count is reversed. This does not affect the judgment and sentences on the substantive counts, which are affirmed.