### SHERWIN et al. v. UNITED STATES. *

(Circuit Court of Appeals, Fifth Circuit. March 11, 1924. Rehearing Denied April 4, 1924.)

No. 4201.

1. **Criminal law ⊕=42—Evidence furnished Federal Trade Commission without issuance of subpœna not within provision regarding immunity.**

Evidence furnished the Federal Trade Commission in compliance with a request or demand of an examiner of the Commission, without the issuance of a subpœna to the person furnishing such evidence, is not within the terms of Federal Trade Commission Act, § 9 (Comp. St. § 8836i), providing immunity to persons producing evidence, in view of sections 4(2), 6, 8 (sections 8836d, 8836f, 8836h).

2. **Criminal law ⊕=42—Incumbent on one claiming immunity to bring himself within law granting privilege.**

It is incumbent on one claiming immunity from prosecution and criminal misconduct to bring himself within the terms of a law granting that privilege.

3. **Criminal law ⊕=393(1)—Federal Trade Commission Act cannot be construed as requiring evidence without immunity.**

To the extent that Federal Trade Commission Act, § 10 (Comp. St. § 8836j), or any provision of said act, may have been meant to have the effect of requiring any person to furnish evidence tending to incriminate him, without his acquiring any immunity by so doing, such provision is rendered ineffective by Const. Amend. 5, providing that no person shall be compelled to be a witness against himself in a criminal case.

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari granted 44 Sup. Ct. 637, 68 L. Ed. ——.

In Error to the District Court of the United States for the Northern District of Texas; Benjamin F. Bledsoe, Judge.

Charles Sherwin and another were convicted of using the mail for the purpose of executing an alleged scheme to defraud, and for conspiracy to commit that offense (United States v. Lee, 290 Fed. 517), and bring error. Affirmed.

W. P. McLean, Jr., and Samuel R. Sayers, both of Fort Worth, Tex. (McLean, Scott & Sayers, of Fort Worth, Tex., on the brief), for plaintiffs in error.

Henry Zweifel, U. S. Atty., of Fort Worth, Tex., and Sylvester R. Rush, Sp. Asst. Atty. Gen. (Frank M. Parrish, Sp. Asst. Atty. Gen., on the brief), for the United States.

Before WALKER and BRYAN, Circuit Judges, and SIBLEY, District Judge.

WALKER, Circuit Judge. The plaintiffs in error (herein called defendants) were convicted on all of the six counts of the indictment, which was found in March, 1923. Five of those counts charged violations of section 215 of the Criminal Code (Comp. St. § 10385), by using the United States mail for the purpose of executing an alleged scheme to defraud, and the remaining count charged a violation of section 37 of that Code (Comp. St. § 10201), by conspiring to commit the offenses charged in the other counts. The assignments of errors are based upon the overruling of demurrers to the indictment and of a motion to quash the indictment, and upon the action of the court in ruling against a claim of immunity made in behalf of defendants.

The assignments of error based on suggested defects in the indictment have not been much insisted on, and are considered to be so devoid of merit as to make unnecessary a discussion of them. The alleged scheme to defraud involved the organization and promotion of several companies under the guise and in the form of trust estates, with principal offices at Fort Worth, Tex., for the pretended purpose of engaging in the production and sale of oil, and engaging in the oil business in general for profit, and the sale of shares or certificates of beneficial interest in said companies. The claim of the defendants that they were immune from prosecution for the offenses charged in the indictment was based on evidence to the following effect:

Each of the defendants was connected as an official with and took part in the operations of the companies named in the indictment from the date of the organization thereof up to the time of the trial. They received through the United States mail the following communication, addressed to one of those companies:

"Washington, June 30, 1922.

"General Lee Development Interests, Edwards Building, Fort Worth, Texas—Sirs: This Commission officially requests, under sections 5, 6, 9, and 10 of the Federal Trade Commission Act, that you report to it and furnish at once information called for by the annexed schedule. As to any portion thereof which you cannot answer immediately please supplement your first statement within seven days upon the receipt of this letter. The Commission will consider application for an extension of time to answer any specific question for good cause shown. Your attention is respectfully called to the

penalties provided in section 10 of the Federal Trade Commission Act (last page of schedule A, herewith inclosed) for any failure, refusal, delay, or falsification of or in any report made in answer to this Commission's lawful inquiry.

"This Commission is charged with the duty of preventing unfair methods of competition and with the investigation of corporations, and it may make public so much of the information it obtains as it may deem in the public interest. It is believed that the small inconvenience of filing the information which we now request will be borne cheerfully in general, because of the benefit which will accrue to the public and because of its interest therein.

"Very truly yours,      Federal Trade Commission,
                    "Otis B. Johnson, Acting Secretary."

The defendants did not reply to that communication. Not long after the receipt of it, J. F. Southworth, a special examiner of the Federal Trade Commission, came to the offices of said companies in Fort Worth and asked for the information, called for by the above set out communication and the questionnaire which accompanied it. At first the defendants declined to furnish such information, putting their declination upon the ground that the Federal Trade Commission did not have jurisdiction over said companies, because they were not corporations. Later, after defendants were advised by their attorney that said companies were under the jurisdiction of the Federal Trade Commission, and after Mr. Southworth had read in the presence of the defendants provisions of the Federal Trade Commission Act (Comp. St. §§ 8836a–8836k) pertaining to the penalty for refusing to comply with its demands for information and documents, defendants answered in considerable detail the questions contained in the questionnaire, and also exhibited certain letters to and from the share or unit holders of said companies, and certain correspondence relating to adjusted and unadjusted complaints arising out of the sales of shares or units. The following part of section 9 of the Federal Trade Commission Act (38 Stat. 722, U. S. Comp. St. § 8836i) was not read in the presence of defendants:

"But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the Commission in obedience to a subpœna issued by it."

No subpœna was issued, neither of the defendants was sworn, and none of the statements made by defendants in pursuance of the request or demand of Southworth was under oath. There was uncontradicted testimony to the following effect: None of the evidence presented to the grand jury which found the indictment was obtained from or secured by the Federal Trade Commission, but some of that evidence related to matters which were disclosed by the defendants in compliance with the request or demand of Southworth. The post office inspector and the Special Assistant United States Attorney, who alone acted for the government in procuring the presentation of evidence to the grand jury, at the time of such presentation were not aware that the matters to which the evidence so presented related had been the subject of consideration by the Trade Commission at all. The presentation of evidence to the grand jury arose out of complaints which came to the notice of said post office inspector.

[1] The above set out provision of section 9 of the Federal Trade Commission Act prescribes the conditions on which amnesty or immunity from prosecution is granted to a natural person who testifies, or produces evidence, documentary or otherwise, before the Commission. For the furnishing of evidence by such a person to come within the terms of that provision, that which is furnished must be testimony, or evidence, documentary or otherwise, produced "before the Commission in obedience to a subpœna issued by it." Evidence furnished in compliance with a request or demand of an examiner of the Commission, without the issuance of a subpœna to the person furnishing such evidence, is not within the terms of the provision. Bouvier's Law Dictionary (Rawle's Third Revision) gives the following definition of the word "subpœna":

"A process to cause a witness to appear and give testimony, commanding him to lay aside all pretenses and excuses, and appear before a court or magistrate therein named, at a time therein mentioned, to testify for the party named, under a penalty therein mentioned. This is called distinctively a subpœna ad testificandum."

The same book gives the following definition of "subpœna duces tecum":

"A writ or process of the same kind as the subpœna ad testificandum, but with a clause requiring the witness to bring with him and produce to the court books, papers, etc., in his hands, tending to elucidate the matter in issue."

The provision of section 9 of the act conferring power on District Courts of the United States in case of contumacy or refusal to obey a subpœna issued indicates that the word "subpœna," as used in the act, was intended to have the above stated meaning. Section 4 (2) of the act (Comp. St. § 8836d) contains the following provision:

"'Corporation' means any company or association incorporated or unincorporated, which is organized to carry on business for profit and has shares of capital or capital stock, and any company or association, incorporated or unincorporated, without shares of capital or capital stock, except partnerships, which is organized to carry on business for its own profit or that of its members."

The act confers on the Commission powers to investigate the organization, business, conduct, practices, and management of corporations engaged in commerce, excepting banks and common carriers subject to the Act to Regulate Commerce (Comp. St. § 8563 et seq.), to require such corporations to file with the Commission reports, or answers in writing to specific questions, as to the matters mentioned, and by its duly authorized agent or agents to have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against, and members and examiners of the Commission are authorized to administer oaths and affirmations, examine witnesses, and receive evidence. Sections 6, 8 (Comp. St. §§ 8836f, 8836h).

In view of the provisions of the act as to the Commission procuring information otherwise than from witnesses acting in obedience to

subpœnas issued by it, and as to examiners of the Commission administering oaths and affirmations, examining witnesses, and receiving evidence, it is not without significance that the above-quoted provision was so framed as to manifest an intention to grant immunity only to a natural person who testifies or produces evidence, documentary or otherwise, before the Commission in obedience to a subpœna issued by it. There is a marked contrast between the extent of the powers given to the Commission, its examiners and agents, to procure information or evidence, and the scope of the provisions requiring a person to attend and testify, though the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture, and as to such a person not being prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence before the Commission in obedience to a subpœna. The following is the provision of the act which immediately precedes the one above set out:

"No person shall be excused from attending and testifying or from producing documentary evidence before the Commission or in obedience to the subpœna of the Commission on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture." Section 9 (Comp. St. § 8836i).

The language of the amnesty or immunity provision, especially when that language is considered in the light of its context, manifests the absence of any intention to grant amnesty or immunity to a person who furnishes evidence without a subpœna to him having been issued by the Commission. It was for the lawmakers to determine whether amnesty or immunity should or should not be granted, in order to procure evidence which, without such a grant, might not be obtainable, because of the provision of the Fifth Amendment to the Constitution that "no person * * * shall be compelled in any criminal case to be a witness against himself," to prescribe the circumstances or conditions under which such grant is to be effective, and to specify the governmental agency or agencies to be intrusted with the power of determining whether evidence shall or shall not be sought or procured, when a result of procuring it will or may be to render the person furnishing it immune from prosecution or from being subjected to a penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence.

[2, 3] It is incumbent on one claiming immunity from prosecution for criminal misconduct to bring himself within the terms of a law granting that privilege. The privilege conferred by the provision in question cannot properly by construction be enlarged beyond that which the language of the provision granting it naturally and legally imports. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 543, 9 L. Ed. 773; Louisville & Nashville R. Co. v. Kentucky, 161 U. S. 677, 685, 16 Sup. Ct. 714, 40 L. Ed. 849. Provisions of the act creating offenses for failure to produce evidence, especially the one of section 10 (Comp. St. § 8836j) as to any person who neglects or refuses to testify, or to produce documentary evidence, if in his power to do so, in obedience to a lawful requirement of the Commission, being guilty of an offense,

have been referred to as indicating an intention to coerce the furnishing of evidence, though self-incriminating, by a person not acting in obedience to a subpœna issued by the Commission. Those provisions cannot properly be given the effect of making the meaning of the immunity provision different from that expressed by its language. To the extent that any provision of the act may have been meant to have the effect of requiring any person to furnish evidence tending to incriminate him, without his acquiring any immunity by so doing, such provision is rendered ineffective by the above-quoted provision of the Fifth Amendment. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110.

The above-indicated conclusion is corroborated by the history of an earlier enactment, upon which the one now in question evidently was modeled. The act approved February 11, 1893, entitled "An act in relation to testimony before the Interstate Commerce Commission," etc., contained the following:

"But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said Commission, or in obedience to its subpœna, or the subpœna of either of them, or in any such case or proceeding." U. S. Comp. Stat. § 8577.

The just-quoted provision was made to apply to proceedings provided for by the act entitled "An act to establish the Department of Commerce and Labor," approved February 14, 1903. 32 Stat. 825 (Comp. St. § 853 et seq.). In the case of United States v. Armour & Co. (D. C.) 142 Fed. 808, it was decided, on March 21, 1906, that under the last-mentioned provision a person who appeared before the Commissioner of Corporations, on his demand or by his request, and gave testimony, although not sworn, was entitled to the immunity provided for by the provision mentioned. Soon after that decision was rendered, and following the action of the President in calling it to the attention of Congress (4 Wigmore on Evidence [2d Ed.] § 2282, p. 962), it was provided by an act approved June 30, 1906, that under the immunity provisions last mentioned "immunity shall extend only to a natural person, who, in obedience to a subpœna, gives testimony under oath or produces evidence, documentary or otherwise, under oath." 34 Stat. 798, U. S. Comp. Stat. § 8580.

The just-quoted act very clearly discloses the unwillingness of Congress to permit, in the cases then dealt with, the acquisition of immunity by one who furnishes evidence without being subpœnaed and sworn. We think that with equal clearness the immunity provision now in question, which is quite similar to those dealt with in the act last quoted, discloses the absence of any intention to permit the acquisition of immunity by a person furnishing information or evidence otherwise than by testifying, or producing evidence, documentary or otherwise, "before the Commission in obedience to a subpœna issued by it." The provision was so framed as to create safeguards against immunity being conferred unintentionally, or as the result of action by any one not vested with authority to determine whether evidence desired shall

be procured at the risk of the furnisher of it acquiring immunity from prosecution for criminal misconduct.

The conclusion is that the defendants did not become entitled to immunity as a result of what the above-mentioned evidence showed was done by them, and that the court did not err in so ruling.

The judgment is affirmed.