## MORRIS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 24, 1925. Rehearing Denied October 20, 1925.)

No. 6854.

1. **Indictment and information ⊃86(2)—Indictment for conspiracy to violate statute relating to misuse of mails held not indefinite.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to use mails to defraud, contrary to section 215 (section 10385), count of indictment, charging overt act in district in which conspiracy was claimed to have been formed and in which venue was laid, was not indefinite for charging conspiracy at many different places to violate statute.

2. **Criminal law ⊃113—Venue in conspiracy case may be laid in district where overt act is committed.**

Venue in conspiracy case under Criminal Code, § 37 (Comp. St. § 10201), may be laid in district where overt act is committed.

3. **Criminal law ⊃113—Fact that accused might have conspired in many different places does not defeat prosecution in one of places within jurisdiction of court.**

Fact that persons accused, under Criminal Code, § 37 (Comp. St. § 10201), of conspiracy to misuse mails contrary to section 215 (section 10385), might have conspired in number of places, does not defeat prosecution in one of such places within jurisdiction of court.

4. **Conspiracy ⊃41—Not necessary that accused himself should commit overt act charged.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to misuse mails contrary to section 215 (section 10385), it is not necessary that accused himself should commit overt act charged, since, if conspiracy is established, and any one or more of the parties thereto act in furtherance of common design, such act of one conspirator is overt act of all.

5. **Post office ⊃35—Intent to use mails as part of scheme to defraud not necessary, if fraudulent scheme has been devised, and mails are used in carrying it into effect.**

Although formerly, under Rev. St. § 5480, scheme to defraud must have embraced intent to use mails as part of scheme to render accused liable, under Criminal Code, § 215 (Comp. St. § 10385), such intent is not necessary, but it is sufficient if fraudulent scheme has been devised and mails are used in carrying it into effect.

6. **Conspiracy ⊃32—Conviction for conspiracy to misuse mails cannot be sustained without proof of intention.**

In prosecution for conspiracy under Criminal Code, § 37 (Comp. St. § 10201), to violate section 215 (section 10385), by using mails to defraud, intended use of mails is substantial element of offense, and conviction cannot be sustained without proof thereof.

7 F.(2d)—50

7. **Conspiracy ⊃43(4)—Charge of agreement to violate statute relating to misuse of mails held equivalent to charge of intention to use mails in carrying out scheme to defraud.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to use mails to defraud, contrary to section 215 (section 10385), although count of indictment did not contain specific and clear allegation of intent, its charging agreement to do things constituting violation of latter statute, which could not be violated without use of mails, was equivalent to charge of intention to use mails in carrying out scheme to defraud.

8. **Conspiracy ⊃43(3)—Indictment held to sufficiently charge method in which scheme to defraud by use of mails was to be carried out.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to defraud by misuse of mails, contrary to section 215 (section 10385), indictment held to sufficiently charge method in which scheme was to be carried out, regardless of failure of overt acts alleged to relate to use thereof.

9. **Conspiracy ⊃43(5)—Overt acts charged held to show conspiracy to be carried out by use of mails.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to use mails to defraud, contrary to section 215 (section 10385), overt acts charged by indictment held to show conspiracy to defraud by use of mails.

10. **Conspiracy ⊃43(5)—It is not necessary that overt acts charged be effective in execution of conspiracy to defraud by use of mails.**

In indictment under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to defraud by use of mails, contrary to section 215 (section 10385), it is not necessary that overt acts charged be effective in execution of scheme.

11. **Criminal law ⊃878(4)—Acquittal of accused on eighteen counts, charging scheme to defraud and using mails in pursuance thereof, held not to render conviction of conspiracy to defraud by misuse of mails error.**

Fact that accused was acquitted under eighteen counts of indictment, charging scheme to defraud, and depositing in pursuance thereof letter in United States mails, does not render conviction under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to defraud by misuse of mails, contrary to section 215 (section 10385), error; overt acts alleged and performed being other than substantive offenses charged in counts under which he was acquitted.

12. **Conspiracy ⊃32—Conspiracy to defraud by misuse of mails held distinct offense from scheme to defraud and depositing letter in pursuance thereof in mails.**

Conspiracy, contrary to Criminal Code, § 37 (Comp. St. § 10201), to defraud by misuse of mails contrary to section 215 (section 10385), is substantive offense, distinct from offense of scheme to defraud and depositing in pursuance thereof letter in mails.

**13. Conspiracy ⊕➾28—Conspiracy to commit crime is offense different from crime which is object of conspiracy.**

Conspiracy to commit crime is different offense from crime which is object of conspiracy.

**14. Criminal law ⊕➾593—Refusal of continuance for death of counsel held not abuse of discretion.**

In prosecution for schemes to defraud and depositing letter in mails in pursuance thereof, and under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to defraud by use of mails, contrary to section 215 (section 10385), where attorney, member of one of firms conducting defense, appeared only on first day of trial, and suddenly died three days thereafter, refusal of continuance because thereof was not abuse of trial court's discretion.

**15. Conspiracy ⊕➾47—Evidence held to sustain conviction for conspiracy to defraud by use of mails.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201) for conspiracy to defraud by use of mails, contrary to section 215 (section 10385), evidence *held* to sustain conviction.

**16. Conspiracy ⊕➾47—Conspiracies to defraud are usually shown by circumstantial evidence.**

Conspiracies contrary to Criminal Code, § 37 (Comp. St. § 10201), to defraud by use of mails, contrary to section 215 (section 10385), are generally shown by circumstantial evidence.

**17. Conspiracy ⊕➾32—Conspiracy to defraud by misuse of mails may be accomplished without mailing letter.**

Conspiracy to defraud, contrary to Criminal Code, § 37 (Comp. St. § 10201), by misuse of mails, contrary to section 215 (section 10385), may be accomplished without mailing any letter.

**18. Criminal law ⊕➾423(1)—Acts of other conspirators in carrying out purpose of conspiracy may be shown.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to defraud by misuse of mails, contrary to section 215 (section 10385), if accused was in conspiracy alleged, acts of other conspirators in carrying out purpose of conspiracy could be shown.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Otto L. Morris was convicted of a conspiracy to defraud by misuse of mails, and he brings error. Affirmed.

Frank J. Looney, of Shreveport, La., and H. S. Powell, of El Dorado, Ark. (Powell, Smead & Knox, of El Dorado, Ark., and Foster, Looney, Wilkinson & Smith, of Shreveport, La., of counsel), for plaintiff in error.

James D. Shaver, Sp. Asst. U. S. Atty., of Texarkana, Ark. (S. S. Langley, U. S. Atty., of Ft. Smith, Ark., and H. L. Arterberry and Sylvester R. Rush, Sp. Asst. Attys. Gen., on the brief), for the United States.

Before KENYON and BOOTH, Circuit Judges, and AMIDON, District Judge.

KENYON, Circuit Judge. Plaintiff in error (designated herein as defendant) together with a number of other persons, was indicted on December 12, 1923, in the District Court of the United States for the Western District of Arkansas. All were charged in eighteen counts of the indictment with a violation of section 215 of the Criminal Code (Comp. St. § 10385), by having devised a scheme to obtain money and property by false pretenses, and in carrying it out to have used the United States mails. The indictment occupies eleven pages of print in describing the scheme. The nineteenth count of the indictment charges a conspiracy of the same defendants under section 37 (Comp. St. § 10201) to violate said section 215 of the Criminal Code, and as a part of said violation to commit the offenses set forth in the first eighteen counts thereof. Some fifty-one overt acts in pursuance of the scheme to defraud are alleged, none of which relate to the placing of any letter or package in the mails, or receiving one therefrom.

At the conclusion of all the evidence, a motion was made to direct a verdict of not guilty. No grounds for such motion were specified. This was overruled by the court.

On June 6, 1924, the jury returned a verdict of guilty as to defendant on the nineteenth or conspiracy count, and a verdict of not guilty on the first eighteen counts charging violations of section 215 of the Criminal Code.

The alleged scheme to defraud and conspiracy so to do were based on certain promotion organizations under the guise and in the form of trust estates supposedly to engage in the production of oil and the sale to the public of shares or units therein. These organizations were designated, "Harry N. Morris, Trustee," "Workingman's Syndicate," "Harry Morris Guaranteed Gusher No. 2," and "Harry Morris Guaranteed Gusher No. 3," which seems to have been a general merger of all of the other promotion companies. The Mid-Continent Brokerage Company and the Morris Drilling Company were organized as subsidiary concerns, in both of which defendant was an owner. It is alleged in the indictment that the Mid-Continent Brokerage Company was nothing but the mouthpiece of defendants in sending out market letters quoting fictitious prices on the

units or certificates of interest of said companies.

An intensive campaign of advertising was carried on for the purpose of selling shares or units of interest in these companies. $187,695.03 was spent for advertising the promotion ventures, and underwriters' commissions of $321,360.76 were paid for selling units. Nearly $2,000,000 of stock, or units of interest, were sold in Harry Morris Guaranteed Gusher No. 3. These advertisements were inserted in various papers throughout the country through the instrumentality of a certain advertising agency. To illustrate the character of the claims made by these various promotion companies, we quote extracts from a few of the exhibits introduced in the case, either letters or advertisements, viz. letter of Harry N. Morris of February 3, 1922, Exhibit No. 521:

### "My Guarantee

"To the Man or Woman Who Can't Afford to Lose.

"I guarantee a producing oil well—I guarantee it positively, absolutely, unequivocally —without the quivering of an eyelash, or the batting of an eye—

"I back my guarantee by saying to you:

"Don't send me a thin dime—send it to the Guaranty Bank & Trust Company, El Dorado, Arkansas, with instructions: 'When Harry Morris, Trustee, well in Sec. 20–18–15 produces oil—that oil hits the crown block or goes out the side—turn my money over to Harry Morris.'"

From Exhibit No. 67A, an advertisement of the Dallas Oil News, July 28, 1922, the following:

### "Exhibit No. 67A.

"The Dallas Oil News, July 28, 1922.

"Harry Morris Guaranteed Gusher Syndicate No. 2   5 Proven El Dorado Acres Morris Actual Cost Plan.

### "His Record.

"The record of Harry Morris is one of the most remarkable in the history of the oil industry. His trustee syndicate well, a guaranteed gusher, came in as a big producer and is now paying off every month.

"His Workingman's Syndicate well came in a big gusher and is now earning big dividends every day.

"His Harry Morris Guaranteed Gusher well is on top of the sand and bids fair to be brought in as one of the best producers, of the field.

"His Guaranteed Gusher Syndicate No. 2 his new enterprise, is preparing to drill on five golden acres in the heart of the El Dorado field and should pay enormous returns to all those who buy his units."

From Exhibit 68, advertisement in the National Oil Review, September 22, 1922:

"Harry Morris Huge 424% Cash Dividend Gives Homes and Cars to Unit Holders.

"These letters are living proof to all the world of how Harry Morris keeps faith with his unit holders. Are you one of those whom this man's great work is benefiting? You can be if you will act now and get in before another big Harry Morris pay day comes.

"Here are some letters showing what unit holders in the Guaranteed Gusher Syndicate No. 2 think of Harry Morris and his 424 per cent. cash dividend. Originals of all these letters are on file in Mr. Morris' office, and the names and addresses of their senders will be given on request.

"Winsome Wyoming Lady Receives 424% in cash. [Photograph.] The above picture shows Miss Ella May Pury of Oakley, Wyoming, who was one of the very very fortunate investors with Harry Morris to receive a cash dividend of 424%."

From the same exhibit the following:

"Warning! Harry Morris has absolutely no connection with any other guaranteed gusher proposition. Harry Morris is sole originator of the guaranteed gusher plan and his syndicates have always secured gushers. The tremendous merit of the guaranteed gusher plan is obvious because of the large number of imitations that have sprung up since Mr. Morris came out with his first guaranteed gusher deal. Mr. Morris is one of the few operators guaranteeing a gusher who is financially responsible and can back up any and all statements. Also make sure that when you are guaranteed a gusher that an oil gusher and not a mere gas gusher or a salt water gusher is meant and that when you are guaranteed dividends, cash dividends are meant. Harry Morris always pays dividends in cash.   *   *   *

"You Can Ride In An Automobile, Too.

"You Must Realize when you come into this syndicate that you are getting in on two wells about which there is no guess work— two wells which are absolutely guaranteed to be huge gushers.

"You Must Realize that one of these wells is in the very core, the very heart, of the old established proven El Dorado field, where a new deep sand has just been found, giving

me every reasonable assurance of at least a 5,000 barrel gusher well. * * *

"You Must Realize that I have enabled my unit holders to buy fine automobiles—to pay out their homes—to enjoy all the worth while things of life.

"You Must Realize that if this sale now pending of all or part of my Camden holdings goes through I could pay a dividend far, far greater than my 424 per cent. dividend.

"You Must Realize that the moment such a lease is closed you cannot get into the syndicate.

"You Must Realize that you have a chance here to make 1,000 per cent. or more within 30 days.

"You Must Realize that I am a square man —that when I make these huge sums I pay them out to my unit holders.

"You Must Realize that if you expect to get in on my next winning—and I warn you it may come at any time—you must act now."

Another advertisement from the Texas Oil World of September 30, 1922, contained this:

"This may be my final call! Now, my friends, you stand today at the most important crossroad that you have encountered in the journey of life. You are face to face right now with a decision that can have an unalterable effect upon your future years. Today you are offered the opportunity of joining hands with Harry N. Morris. He guarantees to bring in two gusher wells for you. You know from what he has done in the past that Harry N. Morris will make good his word. He is offering to let you in on an actual cost basis—here is no promotion, no water here.—Harry Morris is six feet of iron manhood—he's dealing with you as a man. Will you go with him? That is the question. To refuse means to throw away the greatest opportunity that you have ever known; to refuse means that you have forgotten your duty to those who look to you to provide them with the comforts and the luxuries of life; to refuse means to abandon hope of having the things that make life worth while; to refuse means to give up ambition—pride. Refuse —and see others profit! Refuse—and deny your loved ones that which is their due! Refuse—and engulf your soul and body in the hopeless gulf of mediocrity!    To accept means to come into your own! To accept means to profit beyond your fondest dreams! To accept means to become rich, wealth! To accept means that your loved ones may have all their desires fulfilled! Refuse or accept! Which? The answer is up to you. The decision is your own. Which will it be? Which will it be? Act! for the sake of fortune now!"

Many representations were made, so extravagant as to bear the impress of falsity on their face. The purpose was to show that oil was being discovered and wells were being sunk for the benefit of the unit holders in the various syndicates, and to stimulate the sale of units or stocks. In Harry Morris Guaranteed Gusher Syndicate No. 2, a stock dividend of 424 per cent. was paid in silver and sent in sacks by express. While the capital of this company was almost negligible, the receipt of such dividends acted as a stimulant for stock purchases in Harry Morris Guaranteed Gusher Syndicate No. 3. The evidence shows that those receiving these dividends could not act quickly enough to secure stock in Syndicate No. 3. The false pretenses and representations were calculated to arouse nearly every human emotion. The mails of the United States were freely used in carrying on the work of these syndicates.

The assignment of errors presents a number of questions which we can properly group under four heads, viz:

First. The sufficiency of the indictment.

Second. Alleged error of the court in denying motion for continuance on account of the death of one of the counsel for defendant, Mr. Wilkinson.

Third. That the evidence is not sufficient to sustain the conviction. A motion was made at the close of all the evidence to direct a verdict although the same did not specify the grounds therefor.

Fourth. Failure to give certain requested instructions.

I. As to the indictment: It was challenged by demurrer, and is assailed in argument as vague, indefinite, uncertain, and not charging any crime under the laws of the United States. The objections to count 19 thereof, raised by demurrer, and others discussed in the brief or counsel for defendant, may be summarized as follows: (a) That it is indefinite because it charged the defendants conspired at some thirteen different places to commit violation of section 215 of the Criminal Code; (b) that it does not charge the overt acts to have been committed by the defendants; (c) that it does not charge a specific intent to use the United States mails in carrying out the alleged conspiracy; (d) that it does not charge the method in which the scheme was

to be carried out; (e) that the charge of overt acts shows that the mails were not to be used in pursuance of the alleged crime and conspiracy, and that the scheme was to be carried out by personal solicitation. We take up these various attacks upon the indictment in their order.

[1] The nineteenth count of the indictment, after setting forth that defendants continuously from the 1st of December, in the year 1921, to the date of the filing of the indictment (December 12, 1923) at El Dorado, Ark., in the Texarkana Division of the Western District of Arkansas, conspired together to violate section 215 of the Criminal Code of the United States, further says:

"And among said violations to commit the divers offenses charged against the said defendants in the preceding counts of this indictment; and the said defendants did thereafter do divers acts to effect the object of said unlawful and felonious conspiracy, to wit, not only the several acts of placing and causing to be placed letters, circular letters, units and certificates of interest, advertisements, publications, and market letters, in the post office of the United States at El Dorado, Ark., and unlawfully causing them to be sent and delivered by the post office establishment of the United States as charged in the preceding counts of this indictment, but by numerous acts of preparing said letters, circular letters, units or certificates of interest, market letters, advertisements, and publications, for mailing in the post office at El Dorado, Ark., to be sent and delivered by the post office establishment of the United States, mentioned in the first count of the indictment."

The first overt act is charged to have been committed in El Dorado county, Ark. So, not only is the venue laid in the district where the conspiracy is claimed to have been formed, but also where one of the overt acts is alleged to have been committed.

[2] The Supreme Court has held that venue in a conspiracy case may be laid in the district where an overt act is committed. Hyde and Schneider v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136. This court likewise. Harrington et al. v. United States, 267 F. 97. Indeed, in Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136, the Supreme Court says that the exact place where the conspiracy was formed need not be alleged; that it may be unknown.

[3] The mere fact that defendants might have conspired in a number of places does not defeat prosecution in one of the places within the jurisdiction of the District Court. If so, multiplicity of places of conspiring would result in immunity from prosecution. The Supreme Court said in Hyde and Schneider v. United States, 225 U. S. 347, 363, 364, 32 S. Ct. 793, 801 (56 L. Ed. 1114, Ann. Cas. 1914A, 614): "We see no reason why a constructive presence should not be assigned to conspirators as well as to other criminals; and we certainly cannot assent to the proposition that it is not competent for Congress to define what shall constitute the offense of conspiracy or when it shall be considered complete and do with it as with other crimes which are commenced in one place and continued in another."

[4] The challenge to the indictment that the overt acts are not charged to have been committed by defendant himself is not sound. The statute is perfectly plain on this proposition, and it is not necessary that defendant himself should commit the overt act. If the conspiracy is established, and any one or more of the parties to the conspiracy do an act in furtherance of the common design, such act of one conspirator is the overt act of all the conspirators. Jung Quey et al. v. United States, 222 F. 766, 138 C. C. A. 314; Burns v. United States (C. C. A.) 279 F. 982; Bannon and Mulkey v. United States, 156 U. S. 464, 15 S. Ct. 467, 39 L. Ed. 494; Harrington et al. v. United States (C. C. A.) 267 F. 97. In United States v. Rabinowich, 238 U. S. 78, 86, 35 S. Ct. 682, 684 (59 L. Ed. 1211) the Supreme Court says: "Nor need it appear that all the conspirators joined in the overt act."

[5] The next assault on the nineteenth count of the indictment is that it does not specifically charge intent to use the mails. The first eighteen counts are based on an alleged violation of section 215 of the Criminal Code. Former section 5480 of Revised Statutes was amended by the Act of March 2, 1889, and became section 215 of the Criminal Code. Under the former statute the scheme to defraud must have embraced an intent to use the United States mails as a part of the scheme. Stokes v. United States, 157 U. S. 187, 15 S. Ct. 617, 39 L. Ed. 667. Under section 215 of the Criminal Code such intent is not necessary, but it is sufficient if the fraudulent scheme has been devised and the mails of the United States are used in carrying it into effect. United States v. Young, 232 U. S. 155, 34 S. Ct. 303, 58 L. Ed. 548; Smith v. United States (C. C. A.) 267 F.

665; Robins v. United States (C. C. A.) 262 F. 126.

[6] Where the charge, however, is conspiracy under section 37 of the Criminal Code to violate section 215, the intended use of the mails is a substantial element of the offense. A conviction cannot be sustained without proof of the same. This court squarely so held in Burns v. United States, 279 F. 982.

The matter is well expressed in Farmer v. United States, 223 F. 903, 907, 139 C. C. A. 341, 345, as follows: "Under the first count, therefore, the government had to sustain a heavier burden of proof as to the intent of the conspirators than under the other two. Under 215 it is sufficient to show an intent on the part of the deviser or devisers of the scheme to defraud some one; it is no longer necessary to show an intent to use the mails to effect the scheme, as it was under section 5480, U. S. Rev. Stat. The deviser of the scheme may, at the time he planned it, have intended to avoid all use of the mails in carrying it out; nevertheless if in carrying it out he does use the mails the offense is committed. There are two elements of the crime, a scheme intended to defraud and an actual use of the mails; both of course must be proved to warrant conviction. When, however, the charge is conspiracy to commit the offense specified in section 215, it is necessary to prove an intent, not only to defraud, but also to defraud by the use of the mails." See, also, Schwartzberg et al. v. United States, 241 F. 348, 154 C. C. A. 228.

The government carries a heavier burden where it seeks a conviction under section 37 for a conspiracy to violate section 215 than where it seeks merely conviction for the violation of said section 215 because it must prove an intent on the part of the conspirator to use the mails in carrying out the scheme.

[7] The nineteenth count of the indictment does not seem to contain a specific and clear allegation of intent, but it does charge an agreement to do the things which would be a violation of section 215 of the Criminal Code, and said section could not be violated without the use of the mails. The charge of an agreement to violate section 215 is a charge of an intention to use the mails in carrying out the scheme to defraud. Frohwerk v. United States, 249 U. S. 204, 39 S. Ct. 249, 63 L. Ed. 561. The indictment very clearly shows that the conspiracy alleged contemplated the use of the United States mails to a very great extent.

[8] We see no basis whatever for the contention that the indictment does not charge the method in which the scheme was to be carried out. The indictment is prolific in description. It is true the overt acts alleged do not relate to the use of the mails. An essential element of the alleged conspiracy to violate section 215, as we have said, is intent on the part of the conspirators to use the mails, but the overt acts to carry out the purpose of said conspiracy need not necessarily embrace the use of the mails.

[9, 10] The claim that the overt acts charged show the conspiracy here to be carried out by personal solicitation and not by the use of the mails is ingenious but unsound. If the alleged overt acts show on their face that they could not in any way have tended to effect or further the conspiracy to defraud, then they would not be sufficient. Such claim cannot be successfully made as to the overt acts alleged in the nineteenth count. It is not necessary, however, that they be effective in its execution. Stewart v. United States (C. C. A.) 300 F. 769; United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211.

A careful reading of this indictment, and a consideration of the statutes and decisions upon which it is based satisfy us of its sufficiency. The questions raised have been many times decided adversely to defendant's position. Similar indictments have been quite generally sustained—one very recently in the Circuit Court of Appeals in the Seventh Circuit in a decision filed June 11, 1925, Tank v. United States, 8 F.(2d) ——. See, also, Grossman v. United States (C. C. A.) 282 F. 790; Ader v. United States (C. C. A.) 284 F. 13; Sherwin et al. v. United States (C. C. A.) 297 F. 704; Miller et al. v. United States, 133 F. 337, 66 C. C. A. 399; Simpson v. United States (C. C. A.) 289 F. 188; Tjosevig v. Boyle (C. C. A.) 268 F. 813; McConkey v. United States, 171 F. 829, 96 C. C. A. 501; Williams et al. v. United States (C. C. A.) 3 F.(2d) 933; Thomas v. United States, 156 F. 897, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720.

[11-13] We may here properly note the contention advanced in argument that, inasmuch as defendant was acquitted on every one of the eighteen counts charging a scheme to defraud and the depositing in pursuance thereof of a letter in the United States mails he stands acquitted of participation in the scheme to defraud, and hence cannot be

convicted of the conspiracy to devise such scheme; and counsel for defendant contend that there cannot be a conspiracy to do a certain thing when the jury finds that such thing has not been done, that the conspiracy requires the same mental operation and agreement between certain parties as does the scheme. This apparent puzzle, however, is not a difficult one. That the conspiracy charged is a substantive offense, distinct from the crimes charged in the other eighteen counts, is well settled by the authorities. A conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy. United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; Clune v. United States, 159 U. S. 590, 16 S. Ct. 125, 40 L. Ed. 269; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; Bell et al. v. United States (C. C. A.) 2 F.(2d) 543.

If the facts which would have warranted conviction on any of the eighteen counts would not necessarily have convicted on the nineteenth count, then the acquittal on the other counts would not serve as a bar to a conviction on the conspiracy count; the test being: Is the same evidence required to sustain the nineteenth count and the other counts, or, as generally stated by the courts, are acts essential to convict on one count absent in the other? Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489; Ebeling v. Morgan, 237 U. S. 625, 35 S. Ct. 710, 59 L. Ed. 1151; Murphy v. United States (C. C. A.) 285 F. 801; Moorehead et al. v. United States (C. C. A.) 270 F. 210; Corbin v. United States, 205 F. 278, 125 C. C. A. 114; Bell et al. v. United States (C. C. A.) 2 F.(2d) 543.

In Dealy v. United States, 152 U. S. 539, 543, 14 S. Ct. 680, 681 (38 L. Ed. 545), discussing this question, the Supreme Court points the distinction: "In the case at bar the section of the statute under which this indictment was found requires not merely a conspiracy, but some act to carry into effect its object. This act is only one of the means by which the conspiracy is sought to be carried into effect, just as, in the illustration given, the blow of the pickaxe and the shot from the pistol are means for the accomplishment of the homicide; and a verdict of not guilty as to any one of the counts in this indictment is not necessarily a finding against any conspiracy, but only that the conspiracy and the overt act therein stated did not both exist, while a verdict of guilty upon any other count finds both the conspiracy and the overt act named therein."

The trial court was very discriminating in its instructions as to the various counts of the indictment and the relationship of count 19 thereto, and the alleged use of the mails, as is evident from the following quotations therefrom:

"If you find that there was such a scheme, and that the defendant, Otto L. Morris, knowingly associated in the furtherance of the execution of the scheme, and caused or aided and assisted in causing the letters charged in the indictment to be mailed, then you should find him guilty upon such letters as you find were so mailed as alleged in the indictment. If you do not find those facts you should find him not guilty; that is, you should find him not guilty as to the counts in the indictment charging the mailing of the letter. Record, p. 1102. * * *

"If you find from the testimony beyond a reasonable doubt that the defendant, Otto L. Morris, and Harry N. Morris combined or confederated together, or that they together with the other defendants named in the indictment, or any one or more of them, combined or confederated together to commit the offense of using the mails of the United States to defraud, then you will be warranted in finding—and if any act was committed in furtherance of that conspiracy; that is, any one of the alleged acts charged in the indictment—then you will be warranted in finding the defendant, Otto L. Morris, guilty upon the nineteenth count of the indictment. * * *

"Before you can find the defendant, Otto Morris, guilty upon any one of the counts based upon the charge of a scheme to defraud and the use of the United States mails, you must find beyond a reasonable doubt that there was such scheme as alleged and such use of the mails, and then you must further find beyond a reasonable doubt that the defendant, Otto L. Morris, was a party to such scheme and to said use of the mails. * * *

"Before you can find the defendant, Otto Morris, guilty upon the nineteenth count of the indictment which charges a conspiracy, you must find beyond a reasonable doubt that a conspiracy was entered into between him and the other defendants, or some one or more of them to violate section 215 of the Penal Code of the United States and that some one or more of the overt acts charged in the nineteenth count of the indictment is

shown by the testimony to have been done in furtherance of the object of the conspiracy."

It was essential, in order to convict under any one of the eighteen counts, that the evidence show the use of the United States mails. It was not essential to convict under the nineteenth count that any use of the United States mails be shown, other overt acts in furtherance of the conspiracy being shown. It was not essential to convict under any one of the eighteen counts that an intent to use the mails as a part of a scheme to defraud be shown. To warrant conviction under the nineteenth count, the intent to use the mails must be proved. It is apparent, therefore, that certain facts essential to conviction on any one of the eighteen counts were unnecessary to convict on the nineteenth, and likewise the contrary as to essential facts for conviction under the nineteenth count.

It is quite probable, in view of the verdict, in the light of the instructions of the court, that the jury were not satisfied that defendant was a party to the mailing of the letters. They could acquit on that ground on all eighteen counts and yet consistently find him guilty on the nineteenth, if they believed from the evidence that, even if defendant had not been a party to the use of the mails, he entered into an agreement to defraud which contemplated the use of the mails, and to carry out which overt acts took place, even though such acts did not relate to the use of the mails. So the verdict of acquittal on each of the eighteen counts is not inconsistent with the verdict on the nineteenth count finding defendant guilty as one of the conspirators. It is clear that there could be an acquittal of the offenses charged as violations of section 215 of the Criminal Code, and a conviction of a conspiracy to violate said section, especially as other overt acts were alleged and proved than those embraced in the eighteen counts. The evidence required for conviction is not the same. The findings are not inconsistent as was the case in Rosenthal v. United States, (C. C. A.) 276 F. 714, and Peru v. United States (C. C. A.) 4 F.(2d) 881.

In Bell et al v. United States, 2 F.(2d) 543, 544, this court said: "When the overt acts charged in a conspiracy count are substantive offenses specifically denounced by statute, an acquittal under the conspiracy count does not prevent a prosecution or conviction on counts charging such acts as offenses."

We see no reason why the reverse of this proposition is not true and applicable here, viz., that acquittal of defendant on the substantive charges of the eighteen counts does not prevent conviction on the conspiracy charge of the nineteenth count; the overt acts alleged and proven being other than the substantive offenses charged in the preceding counts.

[14] II. The trial of the case commenced on the 26th day of May, 1924. On the 29th day of May, 1924, one of the counsel, Mr. W. A. Wilkinson, suddenly died, and a motion for continuance on this ground was filed. The firm of which Mr. Wilkinson was a member, and also the firm of which Mr. H. S. Powell and Mr. H. P. Smead were members, conducted the defense. The record shows that Mr. Wilkinson appeared only on the first day of the trial. Under such circumstances a continuance might well be granted, but it is a matter resting in the sound discretion of the trial court. The court knew counsel who were conducting the case for defendant, and was undoubtedly satisfied that defendant's case would be ably conducted. That it was, is attested by defendant's acquittal on eighteen counts. We are satisfied there was no abuse of the court's discretion.

[15] III. A motion was made at the close of the evidence to instruct a verdict of not guilty. No reason therefor is assigned. It is argued, however, that it was in part based on the insufficiency of the evidence. We have read this evidence carefully. While defendant, Harry Morris, who was not tried in this case, was the main genius in promulgating the scheme to defraud, the evidence is ample, we think, to show that defendant conspired with him. The advertisements of the successes and prospects of the various syndicates, and the letters relating thereto sent through the mails, were cunning and calculated to arouse the avarice of the apparently limitless army of those commonly designated "suckers," who expect by buying oil stock to grow rich without effort.

The Harry Morris Guaranteed Gusher Syndicate No. 3 sold approximately $2,000,000 worth of stock, some of it with guaranties of 1,000 per cent. profits. It is strange that any one was credulous enough to believe the statements that were sent out. They are even more exaggerated, lurid, and false than the average of the blue sky announcements, and nearly all were false. Defendant furnished some of the advertisements to the publishers, as appears from the evidence of witness Moore of the Moore Advertising Agency. In his brother's absence he seems to have managed the business. There was evidence

that he had charge of the field operations. He directed issue of certain checks to pay for leases. As an example of his connection with the matter, we quote from evidence of F. L. Copeland, viz:

"Q. You spoke of the cost of leases, $307,000—what do I understand you to mean by that? Is that what the syndicate paid for the leases? A. Yes, sir.

"Q. Where did you get the information from that you made those charges upon the books? A. From the books.

"Q. Where did you get the items to enter on the books? A. The total of lease accounts.

"Q. I am trying to find out who furnished you the data you could made an entry from? A. When a piece was bought, the check was issued to the bank. At the end of the month I would go down and get the total of lease accounts.

"Q. Who directed you to issue the checks? A. Mr. Morris.

"Q. Which Mr. Morris? A. Otto Morris.

"Q. So that $307,000 of the syndicate's money was paid out under those kind of circumstances as you have indicated under syndicate No. 3? A. Yes, sir.

"Q. Direction and supervision of Otto Morris? A. Yes, sir."

[16] Witnesses testified to defendant having charge of the office at El Dorado when they called there. One witness testified that defendant told him he was interested in the syndicate and was in full charge; that he was sending telegrams with reference to the business appears in the evidence. He received mail for the various syndicates. There is ample evidence in this record to justify a jury in finding that defendant was engaged in the conspiracy. Such conspiracies are generally shown by circumstantial evidence. Murry v. United States (C. C. A.) 282 F. 617. It is claimed that he was a mere agent and not a coparticipator. Defendant requested an instruction on that theory. The court fully covered the matter in his instructions.

[17, 18] IV. It is claimed that certain requested charges, Nos. 7, 9, 12, and 14, should have been given to the jury. We have examined them carefully. No. 12 does not correctly state the law. It requests the court to instruct that the conspiracy requires the mailing of a letter. A conspiracy to violate section 215 may be accomplished without the mailing of any letter. Requested instruction No. 14 is that the jury shall not consider other evidence against any person except the defendant. This, of course, is not the law, for, if defendant was in the conspiracy alleged, the acts of the other conspirators in carrying out the purpose of the conspiracy could be shown. We think the other requests were covered by the instructions of the court. The court carefully and discriminately considered every phase of the law with reference to the charges in the indictment. There can be no just criticism thereof, and very little objection was made thereto when counsel were given an opportunity to object and except.

We have examined the record with some anxiety, because of the rather peculiar result of the trial, and are satisfied there are no errors affecting any substantial rights of defendant. The evidence shows a gigantic conspiracy, in which defendant participated, to carry on a cunning swindle of innocent and credulous people.

The judgment is affirmed.