**ALEXANDER v. UNITED STATES and three other cases.**

Nos. 10945, 10946, 10956, 10957.

Circuit Court of Appeals, Eighth Circuit.

April 12, 1938.

Rehearing Denied May 2, 1938.

George C. Dyer, of St. Louis, Mo. (Lee A. Hall, of St. Louis, Mo., on the brief), for appellants Date R. Alexander, George M. Lindsay, and George M. Lindsay, Jr.

P. H. Cullen, of St. Louis, Mo. (Clem F. Storckman and Cullen Coil, both of St. Louis, Mo., on the brief), for appellant Ali Y. Debeh.

David M. Robinson, Asst. U. S. Atty., and Harry C. Blanton, U. S. Atty., both of St. Louis, Mo., for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellants Date R. Alexander, George M. Lindsay, George M. Lindsay, Jr., and Ali Y. Debeh were convicted on each count of an indictment, consisting of eight counts, which charged the use of the mails for the purpose of executing a scheme to defraud, in violation of section 215 of the Criminal Code, 18 U.S.C.A. § 338. Although indicted and tried jointly, they have taken separate appeals, with but one bill of exceptions. The indictment charges that the appellants, and others named as defendants, devised a scheme and artifice to defraud numerous persons, including the public generally, and particularly those persons who would in the future desire the services of legally licensed and professionally competent doctors, surgeons, and chiropractors. All of the persons to be defrauded are referred to in the indictment as the victims of the fraud intended to be perpetrated.

The scheme charged in the indictment was in substance that the defendants named therein would obtain, prepare, and issue to numerous persons fraudulent and fictitious medical and chiropractic diplomas and certificates and fictitious licenses to practice medicine, surgery, and chiropractic in various states.

That the persons to whom such false and fictitious diplomas, certificates, and licenses were issued would open offices in the states of Arkansas, Iowa, and elsewhere and would enter upon the practice of medicine, surgery, and chiropractic; that such persons would display upon the walls of their offices and in prominent places therein the false and fictitious diplomas, certificates,

and licenses within view of the victims; and that the victims would observe, read, and rely upon the false and fraudulent statements and representations in such diplomas, licenses, and certificates.

That by and through the statements in the false diplomas, licenses, and certificates they would falsely represent to the victims that the persons named therein had complied with all the requirements of accredited medical colleges and that they were qualified and authorized to practice medicine, surgery, and chiropractic; whereas appellants knew that all such statements were false and untrue.

And that the false and fraudulent statements and representations were to be made to effect the scheme and artifice to defraud by inducing the victims to submit themselves to the treatment of unlearned and incompetent practitioners not qualified nor authorized to practice medicine, surgery, or chiropractic, and to pay to such practitioners large sums of money for what the victims thought to be competent and legally licensed treatment.

Each count charges that for the purpose of executing the scheme the defendants caused a letter to be sent and delivered through the United States Mails.

There were five other defendants named in the indictment. They were William T. Gallagher, John M. Hamilton, A. E. Krebs, Claude E. Lewis, and Myrtle E. Long.

The case was tried to a jury and all of the appellants were found guilty upon each count. After motions for a new trial were overruled, the appellants George M. Lindsay and Date R. Alexander were sentenced to serve four years in the penitentiary on each count; the appellant George M. Lindsay, Jr., three years; and Ali Y. Debeh, two years. The sentences imposed on each appellant upon the several counts were to run and terminate concurrently.

In brief, the testimony introduced by the government on the trial shows that appellant Alexander was secretary of the Eclectic Medical University at Kansas City, Mo., from 1910 to 1915. That school went out of existence in 1916 and was succeeded by the Kansas City College of Medicine and Surgery. The latter college went out of existence in 1926. and was in turn succeeded by the American Medical University. Alexander was custodian of and had in his possession the records of these institutions. Numerous fictitious medical diplomas introduced in evidence came from these schools and were issued by Alexander. The diplomas, dated back many years, were issued after the schools had gone out of existence to applicants who never attended the schools.

The defendant Laws was secretary of the Eclectic State Medical Board of Arkansas from 1924 to 1933. He issued many fictitious licenses to practice medicine in that state to applicants, most of whom did not pass any examination.

The defendant Myrtle E. Long was secretary of the Iowa State Board of Chiropractic Examinations from 1924 to 1934; and, at the request of appellant George M. Lindsay, she issued a fictitious chiropractic medical license to appellant George M. Lindsay, Jr., for the sum of $250.

Through appellant George M. Lindsay appellant Debeh secured a fictitious high school diploma, a fictitious medical diploma from American Medical University, a fictitious certificate of the Arkansas Eclectic Medical Society, and a fictitious medical license from Eclectic State Medical Board of Arkansas, all for the sum of $2,500. Large sums of money were paid in most instances for the spurious diplomas, certificates, and licenses.

Two of the holders of these counterfeit diplomas, certificates, and licenses, Dews and Garner, testified that they hung them on the walls of their offices. A witness named Krebs testified that he saw them hanging on the walls of Dews' office in Arkansas.

Holders of some of the false diplomas and licenses testified that after receiving them they practiced medicine or chiropractic in various towns in several states earning from $2,000 to $3,000. Debeh practiced in Arkansas, Pennsylvania, Ohio, and West Virginia, collecting for his services $6,000 in all. Without any medical education, some of them practiced medicine, surgery, and obstetrics.

Many letters which passed through the mails were introduced in evidence, in addition to the eight set forth in the indictment.

In their original briefs the appellants argued that the indictment is defective; but in their reply briefs they say, "The appellants believe that said indictment is defective, but the defect in the indictment may not appear so clearly from a consideration of the indictment alone as to justify the sustaining of a demurrer * * * the in-

dictment is attacked, not only because the indictment is defective, but because the testimony, regard being had for the allegations of the indictment, is wholly insufficient to make a case. * * * it is proper to construe the indictment in view of the testimony and the conceded facts which are undertaken to be stated in the indictment." Appellants' view of the case, as thus expressed, throws light upon and aids in understanding the alleged grounds for reversal.

The assignments of error will be rendered clearer by examining more closely the scheme to defraud in the light of the evidence. It will be observed that three classes of persons and a group of instrumentalities are involved. First, there are the persons who were the originators of the scheme. Their part in its performance was to obtain, prepare, and issue the bogus diplomas, certificates, and licenses. Second, there are the persons to be defrauded, the victims. They were the persons (the public generally) who would desire the services of doctors, surgeons, and chiropractors. Between the originators and the victims was a third class. They were the incompetent and unqualified persons who would pose as competent and qualified doctors; and by use of the fictitious credentials furnished by the original schemers, they would deceive the victims and effectuate the fraud. The instrumentalities to be used in the execution of the scheme consisted of the fake diplomas, certificates, and licenses falsely certifying to the qualifications of the persons whose names they bore.

For the purpose of attacking the judgments of conviction, the appellants divide themselves into two groups; each group is represented by different counsel; they have made different assignments of error; and have filed separate briefs.

The first group includes the appellants Date R. Alexander, George M. Lindsay, and George M. Lindsay, Jr. They admittedly belong to the class indicted as originators of the fraud. They are charged with planning the fraudulent artifice and with attempting to carry it into execution.

Appellant Ali Y. Debeh attacks alone and refuses to associate with his codefendants in this appeal. He admittedly belongs to the class to whom the false diplomas, certificates, and licenses were issued and who fraudulently imposed upon the innocent victims.

Following the plan of presentation in this court, we shall first consider together the errors assigned by Alexander and the two Lindsays. Their contentions may be thus summarized: (1) The indictment, in the light of the evidence, does not charge a criminal offense under the statute; or, stated more simply, the evidence is not sufficient to sustain the verdict of guilty; (2) the court erred in overruling the motions of these appellants for a directed verdict; and (3) the court erred in the admission of evidence.

Because of the close relation of the subject matter, the first two alleged grounds for reversal will be considered together. The first contention is that the burden was upon the government to prove all the material elements of the offense charged and that it failed to sustain that burden in the following particular: There was no proof that any of the victims ever saw, read, or relied upon the false representations recited in the bogus diplomas, certificates, or licenses as they hung upon the office walls of the ignorant, incompetent, and unauthorized practitioners. Further, there was proof only that two of the holders of the fictitious diplomas, certificates, and licenses, Dews and Garner, hung them upon their office walls, and the proof failed even to show the exact spot on the walls where they were hung. This latter charge is too trivial to require attention. There was substantial proof of every element of the crime such as to warrant the jury in finding these appellants guilty, unless it be the failure to prove that the victims saw, read, and relied upon the representations in the diplomas, etc.; and this point is without merit. It was incumbent upon the government to prove the essential elements of the scheme, but not that every step of it was accomplished. The crime was complete when the scheme to defraud was devised and the mails were used in an attempt to execute it. Busch v. United States, 8 Cir., 52 F.2d 79, 82; Butler v. United States, 10 Cir., 53 F.2d 800; Belt v. United States, 5 Cir., 73 F.2d 888.

These appellants, in this division of their argument, urge with greatest emphasis the claim that under the allegations of the indictment, interpreted in the light of the evidence, they had finished and completed the fraudulent enterprise in which they were engaged when they delivered the false diplomas, certificates, and licenses. It is

argued that the purchasers of these instruments are not the victims to be defrauded under the allegations of the indictment; that the purchasers were neither alleged nor shown to be deceived for the reason that they knew they were not qualified to practice medicine or chiropractic and that the diplomas were spurious; and these appellants did not supervise the practice of the practitioners, did not receive any of the fees charged and collected from their deluded patients, and had no interest in their use of the diplomas and licenses whatever. Therefore, it is insisted, the indictment as well as the proof fails to sustain the conviction. To support this contention, appellants rely upon the case of Stockton v. United States, 7 Cir., 205 F. 462, 465, 46 L.R.A.,N.S., 936. In the cited case Stockton was convicted of violation of section 215 of the Criminal Code and upon appeal the judgment was reversed. Stockton manufactured and sold by advertising through the mails loaded dice and marked playing cards for use in gambling; and it was charged that in so doing he intended the purchasers to engage persons at play and defraud them. It was held that the indictment did not charge a crime under the statute because loaded dice and marked playing cards are "lawful subjects of commerce"; Stockton's "relation to the matter would have been at an end" when the sale was completed; the victims defrauded could point to no act of Stockton in "justifiable reliance whereon they could claim to have entered into a situation wherein, he defrauded them"; and because to convict him under the statute, it should be made to appear "that he was to be in some relation of confederacy or participation, beneficial or otherwise," in the use of the gambling apparatus.

Assuming that the decision in the Stockton Case is sound, it clearly is not controlling in the instant case. Bogus medical diplomas and forged licenses to practice medicine are not "lawful subjects of commerce." The indictment in this case does not charge as its purpose, nor even as an incident of the plan, a commercial transaction between those who devised the scheme and the practitioners under the false diplomas, certificates, and licenses. The scheme charged here had for its direct object the defrauding of the public. The aim of the scheme is not deflected by the fact that the persons to whom the false instruments were issued paid for them. Had those persons, the purchasers, not been enabled to collect money from the public, no money would ever have passed from them to those who "obtained,

prepared and issued" the fake papers. The participation of the purchasers was an essential of the scheme. The issuers of the fraudulent instruments acted through and in conjunction with the practitioners to represent to the public that the latter were duly qualified and legally authorized to practice. Thus the scheme called for the participation of the originators in the making of false representations to the victims as directly as though they had issued the diplomas and licenses to themselves. Their interest did not end when they delivered the diplomas. This is evidenced by the fact that when their false licensees got into trouble with the authorities, they tried to aid and assist them to carry on the deception and gave advice in connection with their attempt to continue practice in certain states. An indictment, and a conviction thereunder, was sustained by the Fifth Circuit Court of Appeals in Munch v. United States, 24 F.2d 518 (Id., 38 F.2d 1017), in which the allegations of the indictment and the facts were very similar to those in the instant case. Munch, a member and secretary of the Board of Eclectic Medical Examiners of Florida, with a number of others, devised a scheme to defraud by the issuance to themselves of fictitious licenses to practice medicine to enable them to deceive the public. The only difference between the Munch Case and the present case is that Munch issued the false license to himself instead of to some other unqualified person for the purpose of effectuating the fraudulent purpose.

The claim of Alexander and the Lindsays that the court erred in overruling their motions for a directed verdict because their enterprise terminated with the sale of the bogus diplomas, certificates, and licenses is without merit and cannot be sustained.

■ These appellants further insist that the court erred in admitting in evidence over their objections the diplomas and licenses furnished to Debeh on which he had written the word "phoney," not in the presence of any of the objecting appellants and after the attempted execution of the scheme had terminated. This argument is without merit because the point is not presented by any proper assignment of error; the instruments were admissible against their codefendant Debeh; no instruction limiting their effect was requested, Silkworth v. United States, 2 Cir., 10 F.2d 711, 712; and, finally, the court on his own motion did

instruct the jury that no statement made by any codefendant after the scheme had been brought to an end would be binding on any other defendant.

. The appellant Debeh in substance contends (1) that as to him there is a variance between the allegations of the indictment and the proof in that the evidence shows that he did not participate in devising the scheme, nor in obtaining, preparing, and issuing nor in selling the fictitious diplomas, certificates, or licenses; (2) the court erred in refusing requested instructions; and (3) the court erred in excluding certain evidence.

The first of these contentions presents the greatest difficulty.

The evidence shows that Debeh knew nothing about the scheme in its inception. He in fact had nothing to do with planning and devising it. He had no part literally at any time in obtaining, preparing, or issuing any of the many fictitious diplomas, certificates, and licenses which were issued by the other appellants. Debeh was one of the persons to whom the bogus documents were issued and not one of the persons who issued them.

The indictment charges the scheme devised was that the "defendants would obtain, prepare, and issue * * * fictitious diplomas * * * certificates * * * and licenses * * * to various persons" certifying falsely that such persons had complied with all the requirements of accredited medical colleges and that they were qualified and authorized to practice medicine and chiropractic; that the said persons would open offices, would practice medicine, surgery, and chiropractic, and, being so fraudulently licensed as doctors, would collect large sums from the victims.

Counsel for Debeh say the terms "defendants" and "various persons," as used in the indictment, are mutually exclusive; that since the evidence without dispute shows that he belonged to the class designated "various persons," he is not a member of the class charged in the indictment as defendants; that no matter how reprehensible his conduct may have been, he is not guilty of the offense charged in the indictment; and that he cannot be tried for violation of section 215 of the Criminal Code and convicted of some other crime of which he may be guilty but of which he is not charged.

The argument is specious and withal persuasive, but nevertheless defective. Section 215 of the Criminal Code provides that whoever having devised or intending to devise a scheme to defraud shall for the purpose of executing such scheme cause a letter to be mailed is punishable. Adverting to the indictment, it will be observed that the fraudulent plan alleged comprises four elements: (1) That the "defendants" would obtain, prepare, and issue fictitious diplomas, certificates, and licenses; (2) that the persons receiving them, though not qualified nor legally authorized, would practice medicine and chiropractic; (3) that the false diplomas, certificates, and licenses would be displayed in the offices of the practitioners; and (4) that the defendants, through the misrepresentations in the diplomas, etc., would falsely state that the practitioners were duly qualified.

The language of the indictment does not negative the idea that the same person may be a "defendant" and at the same time one of the "various persons" to whom bogus credentials were issued. Of the parties engaged in the execution of a scheme of the type here involved, it is to be expected that some will have to do with procuring and issuing diplomas and licenses, as did Alexander and the elder Lindsay, some will take the role of practitioners, as did Debeh, and some will have a hand in two or more parts of the enterprise, as Lindsay, Jr., apparently did. It is unnecessary for the indictment to identify each defendant with the particular role that he is to take in the execution of the scheme.

The object and purpose of the scheme alleged was to defraud the public, not the "various persons" to whom the false papers were issued. The whole purpose of the scheme was not achieved until that object was accomplished. Every one who had a part in the execution of any one of the four elements of the plan might be charged with having devised a scheme to defraud, and being a party to the scheme at the time the letters were mailed might be made a defendant, because the term "defendant" in a criminal case may include every one who aids or assists in the commission of the crime. Section 332 of the Criminal Code, 18 U.S.C.A. § 550, provides that:

"Whoever directly commits any act constituting an offense defined in any law

**880**

of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

Under this section this court in Greenberg v. United States, 8 Cir., 297 F. 45, 48, held that one who assists in the commission of a crime "may, at the pleader's option, also be charged directly with the commission of the crime, and such an indictment is supported by evidence that the defendant aided and abetted its commission." Compare Jin Fuey Moy v. United States, 254 U.S. 189, 192, 41 S.Ct. 98, 99, 65 L.Ed. 214; Schrader v. United States, 8 Cir., 94 F.2d 926, 927.

■■■ It has long been the rule that "where several acts constitute together one crime, if each is separately performed by a different individual in the absence of the rest, all are principals as to the whole." 1 Bish. New Cr. Law, § 650; Hume v. United States, 5 Cir., 118 F. 689, 698. This rule is equally applicable to offenses under section 215 of the Criminal Code, 18 U.S.C.A. § 338. In Silkworth v. United States, 2 Cir., 10 F.2d 711, one Gilbough was joined as a defendant under an indictment charging violation of section 215. Gilbough performed a minor part in the final consummation of the scheme, but his conviction was affirmed, the court saying (10 F.2d 711, at page 717):

"If his intent was criminal, when he joined a dishonest enterprise, he was part of the scheme. One man may form and accomplish it, with or without assistance; but all who with criminal intent join themselves even slightly to the principal schemer are subject to the statute, although they may know nothing but their own share in the aggregate wrongdoing. One man may render the scheme unitary, though he has the assistance of many others at different times. Schwartzberg v. United States, 241 F. 348, 154 C.C.A. 228; Wilson v. United States, 190 F. 427, 111 C.C.A. 231."

■■■ Again, in determining whether Debeh was a party to the scheme charged, we may refer to the law of conspiracy for helpful analogy, since a scheme such as this, participated in by more than one individual, constitutes in effect a conspiracy. Cochran v. United States, 8 Cir., 41 F.2d 193, 199; Chambers v. United States, 8 Cir., 237 F. 513, 524; Robinson v. United States, 9 Cir., 33 F.2d 238, 240.

The rule established by the conspiracy cases is that the jury may infer agreement and joint responsibility from the fact that the defendant aided with knowledge of the existence of the unlawful enterprise. Luteran v. United States, 8 Cir., 93 F.2d 395, McDonald v. United States, 8 Cir., 89 F.2d 128; Galatas v. United States, 8 Cir., 80 F.2d 15.

That Debeh did knowingly participate was admitted by him in a signed statement given to a post office inspector in 1935. He declared that in February, 1933, he had purchased from Lindsay a high school diploma, medical school diploma, certificate of interneship, and a license to practice medicine in Arkansas, for the sum of $2,500. He then went to Little Rock, Ark., and opened an office, where he stayed until early in 1934. At that time he went to St. Louis, where Lindsay introduced him to the owner of the American Hospital. Debeh then began negotiations for the purchase of the hospital, which were subsequently dropped because he was unable to secure a license to practice medicine in Missouri.

■■■ This evidence clearly supports a finding that during 1933 and 1934 Debeh was working with the other appellants in furtherance of the scheme alleged in the indictment. The fact that he came in long after the plan had had its beginnings, or that he did not take part in carrying out each phase of it as for example, the issuance of the certificates, does not absolve him of complicity at the times mentioned. Silkworth v. United States, supra; Kaplan v. United States, 2 Cir., 18 F.2d 939; Luteran v. United States, supra; McDonald v. United States, supra; Burkhardt v. United States, 6 Cir., 13 F.2d 841; Laska v. United States, 10 Cir., 82 F.2d 672.

■■■ It is likewise of no consequence that Debeh never displayed his false certificate to the public, since his membership among the defendants is sufficiently evidenced by his procuring fraudulent credentials, including an Arkansas license, and commencing to practice medicine thereunder, and by the relationship which continued between him and the others while he attempted to extend his practice into Missouri and while he was seeking to avoid the revocation of his Arkansas license.

Neither can Debeh, having joined in 1933 and 1934 the group who devised the scheme, escape responsibility for the use of the mails in the furtherance of it. The evidence shows that the letters were written for various purposes tending to contribute to the ultimate success of the plan, and this is sufficient even though some of them may have been mailed by persons other than the defendants and at times subsequent to the making of the fraudulent representations. Corbett v. United States, 8 Cir., 89 F.2d 124.

Debeh next complains that the court erred in not properly instructing the jury on the element of intent. His counsel requested several instructions upon this subject which were refused. The court was justified for two reasons: First, the requested instructions did not correctly state the law in every particular; and, second, the instructions given by the court upon that subject covered correctly all the proper elements of the requested instructions.

Finally, Debeh argues that the court erred in excluding evidence of a former indictment returned by the grand jury in February, 1935, charging all the defendants in this case except Debeh with a scheme to defraud based upon the same facts upon which the present indictment is bottomed. Its admissibility is predicated upon the proposition that it was inconsistent with the theory of the present case and that the omission of Debeh's name as a defendant is an admission that he was not a party to the scheme. It is sufficient to say that this contention is not based upon any assignment of error and is not properly before this court. Further, the government is not estopped in any way to prosecute Debeh because he was not named in the first indictment. Buie v. United States, 5 Cir., 76 F.2d 848. It is also the law that one grand jury may refuse to indict upon a given state of facts and another may return an indictment based upon the same facts, and the second will sustain a conviction. United States v. Thompson, 251 U.S. 407, 40 S. Ct. 289, 64 L.Ed. 333. Debeh was not a defendant in the first indictment, and it was, therefore, irrelevant to any issue in the present case.

For the reasons stated, the several judgments appealed from are affirmed.