UNITED STATES of America and United States Postal Service, Plaintiffs,

v.

INTERNATIONAL TERM PAPERS, INC., et al., Defendants.

Civ. A. No. 72-3225.

United States District Court, D. Massachusetts.

Nov. 13, 1972.

James N. Gabriel, U. S. Atty., Frederic R. Kellogg, Asst. U. S. Atty., for plaintiffs.

Richard H. Goldman, Boston, Mass., for Int'l Term Papers, and others.

Thomas P. Kramer, Natick, Mass., for Champion Term Papers, and others.

Stephen Salon, Boston, Mass., for Term Papers Unlimited, and others.

Barry Levine, pro se (as an officer of Academic Research Group).

## MEMORANDUM

FRANK J. MURRAY, District Judge.

The United States and the United States Postal Service (Postal Service) seek in this action a temporary restraining order and preliminary injunction under 39 U.S.C. § 3007 [1] and Rule 65, Fed. R.Civ.P., directing detention of the defendants' incoming mail by the postmaster, pending statutory proceedings under 39 U.S.C. § 3005 before the Postal Service to determine whether an order should issue against the defendants and mail addressed to them.

The plaintiffs' offer to show that the defendants are engaged in a scheme of receiving money through the mail from students at educational institutions in exchange for term papers [2] sold to the students, with knowledge that the students submit the papers for academic credit to the institutions under false representations that the term papers are the work product of the students.

The court heard the application for the relief sought on affidavits submitted by plaintiffs and certain defendants, and the oral arguments of counsel for the parties.

### I

In determining the extent of the showing to be made by plaintiffs on this application, the meaning of the reference to Rule 65 in section 3007 must be resolved. In the very recent case of United States Postal Service v. Beamish, 466 F.2d 804 (3rd Cir., 1972), the court said

> We think that the reference to Rule 65 intends merely to delineate the procedural mechanics applicable to the hearing on probable cause, the notice requirements and the form of the order. It does not suggest incorporation into § 3007 of the common law standards, including that of irreparable harm, typically required of preliminary injunctions issued on the strength of Rule 65 alone.

*Id.* at 806. That analysis of the unclear language of section 3007 will be adopted for the purpose of this case. It rests, therefore, on the plaintiffs to persuade the court that there is at least probable cause to believe that the section is being violated.

### II

Section 3005, the civil mail fraud statute, reads in pertinent part, as follows:

> (a) Upon evidence satisfactory to the Postal Service that any person is engaged in conducting a scheme or device for obtaining money . . . through the mail by means of false representations . . ., the Postal Service may issue an order which—

1. 39 U.S.C. § 3007 provides in pertinent part:

(a) In preparation for or during the pendency of proceedings under sections 3005 and 3006 of this title, the United States district court in the district in which the defendant receives his mail shall, upon application therefor by the Postal Service and upon a showing of probable cause to believe either section is being violated, enter a temporary restraining order and preliminary injunction pursuant to rule 65 of the Federal Rules of Civil Procedure directing the detention of the defendant's incoming mail by the postmaster pending the conclusion of the statutory proceedings and any appeal therefrom. The district court may provide in the order that the detained mail be open to examination by the defendant and such mail be delivered as is clearly not connected with the alleged unlawful activity. An action taken by a court hereunder does not affect or determine any fact at issue in the statutory proceedings.

2. The Government's memorandum and affidavits submitted by various officers of the Postal Service indicate that the defendant organizations sold term papers through the mails at prices ranging from $1.85 to $2.50 per page.

(1) directs the postmaster . . to return such mail to the sender appropriately marked as in violation of this section . . . .

■ On its face, section 3005 does not appear to apply to the plaintiffs' complaint for there is no allegation that the mails were used to communicate with the persons intended to be defrauded, nor did the plaintiffs offer to prove that fact. The plaintiffs contend, however, that the defendants' conduct clearly falls within the purview of the criminal mail fraud statute, 18 U.S.C. § 1341 [3] (which covers mailings intended to carry out a scheme to defraud or obtain money by means of false pretenses, and where proof is not required that the recipient of the mailing was an intended victim of the fraudulent scheme or pretense [4]), and argue that the two fraud statutes should be read *in pari materia* because they were enacted together in 1872, and that section 3005 (originally ch. 335 § 300, 17 Stat. 322) was enacted consecutively to the criminal statute. They further argue that certain cases [5] adumbrate the Congressional purpose that the predecessor statute to section 3005 was enacted to cover the same conduct proscribed by the criminal statute.

The court does not disagree that Congress intended to protect the public generally by a statutory scheme providing remedies proscribing the use of the mails to carry out fraudulent and deceptive schemes. The question here, however, is not whether the conduct of the defendants falls within the Congressional proscription, but whether the plaintiffs have chosen the appropriate remedy. After considering the argument of plaintiffs, and examining the authorities cited by them, the court is not persuaded that the defendants' conduct falls within the scope of section 3005.

In the first place, the plaintiffs' reliance on the assertion that the civil remedy was enacted together with and consecutive to the criminal mail fraud statute is at least tenuous. While the legislative history is not too revealing, the 1872 enactment relied upon by plaintiffs was "An Act to revise, consolidate, and amend the Statutes relating to the Post-Office Department," and sections 300 and 301 referred to by the plaintiffs,[6] may have been in effect well before 1872 and may or may not have stood together as part of the same law at that time.[7] Absent some clarification of the legislative history, which may be difficult, there is nothing to commend

---

3. 18 U.S.C. § 1341 reads in pertinent part:
   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office . . . any matter or thing whatever to be sent or delivered by the Postal Service, . . . or knowingly causes to be delivered by mail according to the direction thereon, . . . any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

4. Alexander v. United States, 95 F.2d 873 (8th Cir. 1938).

5. Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1948); Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943); Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092 (1904).

6. Act of June 8, 1872, ch. 335 §§ 300 and 301, 17 Stat. 322–23. (Section 300 is an early version of what is now 39 U.S.C. § 3005, and section 301 is an early version of 18 U.S.C. § 1341.)

7. The 1872 enactment, reported as H.R. No. 1, 42d Cong., 2d Sess. (1872), was a re-enactment of an earlier bill, H.R. No. 2295, 41st Cong., 3rd Sess. (1870) which had passed the House, but was never further acted upon. *See* Cong. Globe, 41st Cong., 3rd Sess. 86 (1870); *See also* Cong.Globe, 42d Cong., 2d Sess. 71 (1872) (remarks of Mr. Farnsworth). That earlier bill, H.R. 2295, was described by its sponsor, Mr. Farnsworth, the Chairman of the House Committee on the Post-office and Post Roads, as simply a codification of the postal laws then already in existence with a few minor corrections, amendments and deletions. Cong.Globe, 42d Cong., 2d Sess. 15 (1872).

the special significance given to the 1872 codification of the statutes by the plaintiffs.

The court, moreover, is unable to accept the view that the Supreme Court has spoken of the civil and criminal mail fraud statutes as different remedies proscribing the same conduct. In Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1948), the Court, in finding sections 259 and 732 of Title 39 (the predecessors of section 3005) free of constitutional infirmity, reaffirmed the powers of Congress over the mails, and the propriety of the laws passed pursuant thereto, and did not, as plaintiffs argue, find the predecessors of the statutes involved here overlapping in the degree claimed by plaintiffs, much less did the Court address that question. Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1963), also cited by the plaintiffs, was a tax case in which the theory of 39 U.S.C. §§ 259 and 732 was expressed as protecting "the public from fraudulent practices committed through the use of the mails". *Id.* at 474, 64 S. Ct. at 254. Justice Black said it was "not their [§§ 259 and 732] policy to impose personal punishment on violators; such punishment is provided by separate statute, and can be imposed only in a judicial proceeding . . . [footnote omitted]", but did not say or imply that a violation of the criminal mail fraud statute is ipso facto a violation of the civil statute.[8]

Section 3005 is quite clear on its face. The gist of the fraud is directly related to obtaining money through the mail. That is not the case here. On the other hand the criminal statute has a broader sweep.[9] It applies, among other conduct, to one "having devised . . . any scheme or artifice to defraud . . .," which seems quite a bit more likely to embrace the defendants' conduct than the narrower range of section 3005. However, it is clearly not the proper province of the court to make a determination in the context of a purely civil proceeding that a criminal statute is being violated. Nevertheless, treating the fraud statutes as *in pari materia*, as the plaintiffs would have the court do, the plaintiffs have not shown that there is probable cause to believe that section 3005 is being violated.

The business of selling term papers and the like is indeed a shabby business, and does a disservice to the students who support the business. Student cheating and plagiarizing is nothing new; and perhaps it is simply a sign of the times that these once more or less clandestine activities are now being aided and abetted by competitive commercial enterprises openly operating in the market place. These are deplorable developments, their eroding effect on our educational system is a matter of grave concern, and they should not be tolerated.[10] If it is the

8. It might be noted that in all probability, any violation of the civil statute, 39 U.S. C. § 3005, would be a violation of the criminal statute, 18 U.S.C. § 1341, since the criminal statute is broader and more encompassing, while containing the same prohibitions as the civil statute. The converse would not appear to be at all true for the very same reason.

9. *See* note 3 *supra*. The criminal statute does not require that the mails be used to communicate with the persons intended to be defrauded, Blue v. United States, 138 F.2d 351 (6th Cir. 1943), and prohibits mailing intended to induce a fraud against third parties even where the re- cipient of the mailing is in no way fooled or defrauded. Alexander v. United States, 95 F.2d 873 (8th Cir. 1938); United States v. Jones, 10 F. 469 (S.D.N.Y. 1882).

10. It may be noted that the purveyors of term papers have been dealt with by state courts under various other theories. Thus the Suffolk Superior Court has enjoined these defendants, among others, from selling their products to students pending further order of that court, Trustees of Boston University v. Champion Research Corp. et al., Equity No. 96114 (order filed Oct. 26, 1972). That action, of course, in no way makes moot

80

confirmed view of the plaintiffs that these operations are clear violations of the criminal fraud statute, the course is open to them to undertake criminal proceedings. The civil remedy under section 3005 is not appropriate, however, to the showing made on the application for injunctive relief, and, the order requested is denied and the petition dismissed.

or determines any issue in the instant case, the issues and parties being altogether different.

The Attorney General of New York has also found a unique method of dealing with term paper companies. He has sought dissolution of a corporate defendant, presumably in the nature of a quo warranto action, on the ground that its activities had the "direct capacity and tendency of subverting the process of learning and encouraging intellectual dishonesty and cheating" and were contrary to the "public policy of this State in maintaining and preserving the integrity of the educational process". A New York court has enjoined the term paper company from operating during the pendency of the dissolution proceedings. New York v. Saksniit, 69 Misc.2d 554, 332 N.Y.S. 2d 343 (1972), noted in 58 A.B.A.J. 1108 (1972).