**UNITED STATES of America and United States Postal Service, Appellants,**

v.

**INTERNATIONAL TERM PAPERS, INC., et al., Appellees.**

**No. 72–1397.**

United States Court of Appeals, First Circuit.

Heard March 5, 1973.

Decided May 3, 1973.

Frederic R. Kellogg, Asst. U. S. Atty., with whom Harlington Wood, Jr., Asst. Atty. Gen., James N. Gabriel, U. S. Atty., Robert E. Kopp, and Anthony J. Steinmeyer, Attys., Department of Justice, were on brief, for appellants.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The United States Postal Service seeks to invoke 39 U.S.C. § 3007 and Rule 65, Fed.R.Civ.P. to detain defendants' incoming mail pending statutory proceedings under 39 U.S.C. § 3005. Defendants-appellees are four "term paper" companies, engaged in selling academic papers to students for submission to universities and other institutions as the work of the students. The question before the district court was whether there is probable cause to believe that appellees are "engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations". 39 U.S.C. § 3005.

The district court, 351 F.Supp. 76, while recognizing that a companion

criminal statute, 18 U.S.C. § 1341, might well embrace appellees' conduct, held that, since there was no allegation that the mails were used to communicate with the persons intended to be defrauded, § 3005 did not apply and dismissed the complaint.

■ 18 U.S.C. § 1341 makes it a federal offense to use the mails in connection with a scheme to defraud. It is not necessary that the mailing be between the perpetrator and the victim; any mailing in connection with the scheme is enough.[1] Thus the use of the mails to realize on a check previously received from the victim satisfies the statute. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 359, 98 L.Ed. 435 (1954). Of greater present relevancy, the mailing of a false medical certificate to a person who intends to commit fraud by posing as a licensed physician is a covered offense. Alexander v. United States, 95 F.2d 873 (8th Cir.), cert. denied, 305 U.S. 637, 59 S.Ct. 99, 83 L.Ed. 409 (1938).

■ We do not say that § 1341, more explicitly covering use of the mails in connection with schemes exploiting third party victims of false representations, who themselves may have had nothing to do with use of the mails, compels a similar interpretation of § 3005. But we see no barrier, in construing this civil statute dealing with commercial fraud, to give it as broad an interpretation as the language can gracefully bear, particularly in the light of the general "purpose of Congress to utilize its powers, particularly over the mails and in interstate commerce, to protect people against fraud." Donaldson v. Read Magazine, Inc., 333 U.S. 178, 190, 68 S.Ct. 591, 598, 92 L.Ed. 628 (1948). *Cf.* United States v. Seuss, 474 F.2d 385, p. 388 (1st Cir. 1973) (slip op. p. 5).

■ Concededly, all of the injunctive cases which have come to our attention have involved a seller of goods, investment opportunities, or services sending false information about them through the mails to the intended victims. But the technology of merchandising false representations is not confined to selling directly to the consumer. We can see no basis for a policy which would allow a § 3007 injunction against one who mails false advertising to a prospective buyer but would forbid an injunction against one who mails false advertising and fraudulent selling advice to sales representatives for use in calling on prospective buyers. Nor is the language of § 3005 limited to one who falsifies to another and subsequently receives money. Unlike the language in similar statutes aimed at preventing the use of the mails for fraudulent purposes, neither the timing, the source, nor the target of the false representation is here specified.[2] The critical requirement here is that the scheme contemplate the receipt of money through the mail generated by means of false representations. That the student first pays for that which will enable him to make a subsequent false representation to his college does not affect the means-end relationship. That it is not the seller but the buyer who makes the false representation seems equally irrelevant. The reality is that the appellees receive money through the mail by means of assisting students to make false representations to universities.

1. Nothing we say here is to be construed as deciding what connection between the mailing and the fraudulent scheme is necessary for conviction under the criminal statute. *Compare* United States v. Maze, 468 F.2d 529 (6th Cir. 1972), pet. for cert. filed 41 U.S.L.W. 3530 (U.S. Apr. 3, 1973), *with* United States v. Thomas, 429 F.2d 407 (5th Cir. 1970).

2. In the Investment Advisers Act, Congress made unlawful "by use of the mails . . . directly or indirectly—(1) to employ any device, scheme, or artifice to defraud *any client or prospective client.*" 15 U.S.C. § 80b–6. [Emphasis added.] In the Federal Trade Commission Act, Congress explicitly limited a prohibition to direct misrepresentations by the sender to the recipient, by making it "unlawful for any person . . . to disseminate . . . any false advertisement—(1) by United States mails." 15 U.S.C. § 52(a).

We are aware of Congress' intent, in amending this statute in 1968, to eliminate the requirement of proving the sender's intent to deceive. P.L. 90-590, 82 Stat. 1153, 1968 U.S. Code Cong. & Admin.News, pp. 1327, 4290-4302. Lynch v. Blount, 330 F.Supp. 689, 693 (S.D.N.Y.1971) (three-judge court) aff'd, 404 U.S. 1007, 92 S.Ct. 673, 30 L. Ed.2d 676 (1972). This was sought to be accomplished by substituting "false representations" for "false or fraudulent pretenses, representations, or promises", 1968 U.S.Code Cong & Admin.News, at p. 4297, while retaining the phrase "engaged in conducting a scheme or device". In a two-party, sender-receiver situation, the requirement of a "scheme or device" offers no problem of proof; it is simply the intentional mailing-for-money transaction in which a false statement was sent. The Congressional purpose of imposing strict liability for even innocent falsehoods is thus not impeded by the reference to "scheme". In a three-party situation—not, so far as we can discern, considered during the Congressional deliberations—the phrase "scheme or device" becomes important. Encyclopedia Britannica could not be enjoined from distributing its sets simply because a student purchaser submits its essay on Jefferson as his own term paper. For the statute to apply to a sender, where a third party is deceived by a recipient, the sender must contemplate a "scheme" which involves a misrepresentation based on the materials which he sends. In such a case, therefore, the intent of the seller, in the sense of his knowing cooperation in a scheme, is, by the words of the statute, a necessary prerequisite for injunctive remedy—a prerequisite obviously present in this case.

■ Finally, it is clear that the fraudulent transaction need not itself be illegal to permit a postal injunction. Public Clearing House v. Coyne, 194 U. S. 497, 24 S.Ct. 789, 48 L.Ed. 1092 (1904); Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896); Harris v. Rosenberger, 145 F. 449 (8th Cir. 1906) and cases cited therein. Indeed, no such underlying illegality is required for conviction under the criminal mail fraud statute. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). The purpose of both statutes was and is to protect the public against fraud of all kinds, whether or not already legally condemned.

The judgment is vacated and cause is remanded for further proceedings consistent with this opinion.