CRIMES AND PUNISHMENT
Although it is not per se illegal, under Oklahoma law, for an individual, association, corporation, or other organization to advertise on State college and university campuses, solicit, and sell to students certain services of the type that accomplishes assignments given the student by the instructor which are intended for the student himself to accomplish as part of the teaching-learning process, such sale of "research" or "term papers" to the students, with knowledge that the students intend to submit the papers for academic credit to the institutions under false representations that the term papers are the work product of the students, may, under some circumstances, be in violation of the laws of a sister State, or may be in violation of the federal criminal mail fraud statute. Further, such conduct may constitute an interference with the contractual obligations of the student and university and may constitute a violation of the federal civil mail fraud statutes. The Attorney General has considered your request for an opinion wherein you ask the following question: "Is it legal for an individual, association, corporation, or other organization to advertise on state college and university campuses, solicit, and sell to students certain services of the type that accomplishes assignments given the student by the instructor which are intended for the student himself to accomplish as a part of the teaching-learning process?" In order to ascertain the "legality" of a particular course of conduct, such conduct must be analyzed in the light of criminal, as well as civil liability. This Opinion, therefore, will consider first the criminal liability which may be incurred as a result of the aforementioned course of conduct and, second, any civil liability which may result as a consequence thereof. It should be initially noted, and is so recognized by the Attorney General, that, although your question is motivated by a concern for the sale of "research" or "term papers" to the students, with knowledge that the students submit the papers for academic credit to the institutions under false representations that the term papers are the work product of the students, this issue presents serious ramifications to the legitimate publishing firms which sell various types of outlines, analysis of popular novels and texts, essays on various academic subjects, review books, study notes, and other aids used by students in preparing for examinations and assignments. It should further be recognized that your question also may extend to commercial enterprises that provide tutorial assistance, give review courses, and offer courses to assist in preparation for college board, medical board, law board, and other standardized tests. It is further recognized by the Attorney General that certain of these study aids and tutorial services are an accepted and integral part of the academic world. In order to ascertain the criminal liability of the afore-described conduct, it should be noted that 21 O.S. 2 [21-2] (1971), provides as follows: "No act or omission shall be deemed criminal or punishable except as prescribed or authorized by this code. The words 'this code' as used in the 'penal code' shall be construed to mean 'Statutes of this State.' " R.L. 1910, Section 2083. Further, 21 O.S. 3 [21-3] (1971), provides: "A crime or public offense is an act or omission forbidden by law, and to which is annexed, upon conviction, either of the following punishments: "1. Death; "2. Imprisonment; "3. Fine; "4. Removal from office; or, "5. Disqualification to hold and enjoy any office of honor, trust, or profit, under this State." (Emphasis added) R. L. 1910, Section 2084. It is a well settled law in this State that the Legislature must de fine an offense by particular description of act or omission constituting it. In Oklahoma there are no common law crimes, and no act is a crime unless made so by statute. Sharp v. State, ex rel. O.B.A., Okl. Jud., 448 P.2d 301 (1968). It is further well-settled law that: ". . . 'Penal statutes' cannot be enlarged by implication or ex tended by inference, and conviction of crime is unwarranted unless act is within both letter and spirit of penal statute." Ex parte Branett, Okl. Cr., 252 P.2d 496 (1953). In light of the above, it is apparent that no act or omission is subject to criminal liability unless specifically made criminal by an act of the Legislature. Upon reviewing the statutes of this State, the conduct described in your question is not specifically identified. It is, therefore, apparent that under current Oklahoma law it is not per se illegal for an individual, association, corporation, or other organization to advertise on State college and university campuses, solicit, and sale to students certain services of the type that accomplishes assignments given the student by the instructor which are intended for the student himself to accomplish as part of the teaching-learning process. Although the Oklahoma Legislature has not enacted legislation defining the conduct which you have described as a crime, many States have enacted legislation directed at certain "research" or "term paper" companies which prepare assignments for students, knowing that the students intend to submit the same as their own work product, with the intent to defraud the university. Among those States which have enacted such legislation are the States of Colorado, New York, North Carolina, Massachusetts, Maryland, Illinois, Connecticut and California. Of the aforementioned States, only the States of Massachusetts and Maryland have enacted legislation which may be extended to discourage dissemination of such products from that State to others, including Oklahoma. Chapter 271, Section 50 of the General Laws of Massachusetts, provides as follows: "Whoever, alone or in concert with others, sells to another, or arranges for or assists such sale for another, a theme, term paper, thesis or other paper or the written results of research, knowing or having reason to know that such theme, term paper, thesis or other paper or research results or substantial material therefrom will be submitted or used by some other person for academic credit and represented as the original work of such person at an educational institution in the commonwealth or elsewhere without proper attribution as to source, or whoever takes an examination for another at any educational institution in the commonwealth, shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than six months, or both. Added by St. 1973, c. 874." (Emphasis added) Article LXXVII(A), Section 70 of the Annotated Code of Maryland, provides as follows: "(a) No person, firm, association or corporation shall sell or offer for sale to any person assistance in the preparation, research, or writing of a dissertation, thesis, term paper, essay, report or other written assignment for submission to an educational institution in fulfillment of the requirements for a degree, diploma, certificate or course of study. "(b) Nothing contained in this section shall prevent (1) an educational institution, or any member of its faculty or staff, from offering courses, instruction, counseling or tutoring in research or writing as part of a curriculum or other program authorized by an educational institution; (2) tutorial assistance rendered by other persons which does not include the preparation, research or writing of a dissertation, thesis, term paper, essay report or other written assignment intended for submission to an educational institution in fulfillment of the requirements for a degree, diploma, certificate or course of study; or (3) any person from rendering services for a fee which is limited to the typing, transcription or reproduction of a manuscript. "(c) Anyone convicted of violating the provision provisions of this section is guilty of a misdemeanor, and upon conviction thereof, shall be fined not more than $1,000.00 or imprisoned for not more than six months, or both. (1972, ch. 474)" It is, therefore, noted that, although Oklahoma law has no specific statute prohibiting the sale of these items within this State, should these materials be prepared for sale or sold in either the State of Massachusetts or Maryland for distribution in Oklahoma, such conduct would be in violation of the laws thereof and could be subject to criminal sanctions within that State. In reviewing criminal sanctions which may be imposed for the conduct described in your question, it should be further noted that in many instances the transaction between the student and the "research company" occurs through the United States postal service. In those instances wherein the postal services are utilized to complete the transaction, either by the student's mailing of payment and instructions, for the "research company's" mailing of the material, the federal criminal mail fraud statute may be violated. The federal criminal mail fraud statute,18 U.S.C. § 1341, provides as follows: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000.00 or imprisoned not more than five years, or both. As amended Aug. 12, 1970, Pub.L.91-375, 6(j) (11), 84 Stat. 778." In a brief consideration of the federal criminal mail fraud statute, 18 U.S.C. § 1341, in the case of United States v. International Term Papers, Inc., 351 F. Supp. 76 (U.S.D.C. Mass. 1972), was noted that: "The business of selling term papers and the like is indeed a shabby business, and does a disservice to the students who support the business. Student cheating and plagiarizing is nothing new; and perhaps it is simply a sign of the times that these once more or less clandestine activities are now being aided and abetted by competitive commercial enterprises openly operating in the market place. These are deplorable developments, their eroding effect on our educational system is a matter of grave concern, and they should not be tolerated. . . ." Although this case was primarily concerned with the federal civil nail fraud statutes, 39 U.S.C. § 3005, the Court observed that: "If it is the confirmed view of the plaintiffs that these operations are clear violations of the criminal fraud statute, the course is open to them to undertake criminal proceedings." On appeal in the same case, the United States Court of Appeals, First Circuit, in vacating the decision of the District Court on the basis of the decision rendered therein regarding the civil mail fraud statutes, stated: "18 U.S.C. § 1341, makes it a criminal offense to use the mails in connection with a scheme to defraud. It is not necessary that the mailing be between the perpetrator and the victim; any mailing in connection with the scheme is enough. . . ." United States v. International Term Papers, Inc., 477 F.2d 1277 (1st Cir. 1973). It is, therefore, clear that, should a "research" or "term paper" company utilize the United States mail service under a scheme or device which involves a misrepresentation based upon the material sent, criminal sanctions may be imposed. However, in such a case where a third party is deceived by the recipient, the intent of the seller, in the sense of his knowing cooperation in such scheme, a necessary prerequisite. In analyzing the civil liability which may exist under the circumstances heretofore enumerated, it should be noted that there may exist an implied contract between the student and the university which would include an understanding that the student will not defraud the university in order to obtain a given grade, and that any work submitted by the student will represent the result of that student's independent endeavors, except where specifically designated otherwise within the terms of the assignment. In such an instance, the "research" or "term paper" company which delivers a prepared assignment to a student, with knowledge that the student intends to submit the same as his own work product, may be committing the tortuous act of interfering with the obligations of the student party to the said contract. Should the university be able to prove that a company is knowingly engaged in conduct which is designed to interfere with the heretofore-described relationship between the university and the student, an action on behalf of the university for injunctive relief may be available. Further, should a company utilize the United States postal service to engage in the conduct heretofore described, a remedy may exist under the provisions of the federal civil mail fraud statute. 39 U.S.C. § 3005, provides as follows: " (a) Upon evidence satisfactory to the postal service that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations, or is engaged in conducting a lottery, gift enterprise, or scheme for the distribution of money or of real or personal property, by lottery, chance or drawing of any kind, the postal service may issue an order which (1) directs the postmaster of the post office at which the mail arrives, addressed to such a person or his representative, to return such mail to the sender appropriately marked as in violation of this section, if the person, or his representative, is first notified and given reasonable opportunity to be present at the receiving post office to survey the mail before the postmaster returns the mail to the sender; and (2) forbids the payment by a postmaster to the person or his representative of any money order or postal note drawn to the order of either and provides for the return to the remitter of the sum named in the money order or postal note. "(b) The public advertisement by a person engaged in activities covered by subsection (a) of this section, that remittances may be made by mail to a person named in the advertisement, is prima facie evidence that the latter is the agent or representative of the advertiser for the receipt of remittances on behalf of the advertiser. The postal service may ascertain the existence of the agency in any other legal way satisfactory to it. "(c) As used in this section and section 3006 of this Title, the term 'representative' includes an agent or representative acting as an individual or as a firm, bank, corporation, or association of any kind. "(d) Nothing in this section shall prohibit the mailing of (1) a newspaper of general circulation containing advertisements, lists of prices, or information concerning the lottery conducted by a state acting under authority of state law, published in that state, or in an adjacent state which conducts such a lottery, or (2) tickets or other materials concerning such a lottery within that state to addresses within that state. For the purposes of this subsection, 'state' means a state of the United States, the District of Columbia, the commonwealth of Puerto Rico, and any territory or possession of the United States. Pub.L. 91-375, August 12, 1970, 84 Stat. 747, amended Pub.L. 93-583, 4, January 2, 1975, 88 Stat. 1916, Pub.L. 94-525, 2, October 17, 1976; 90 Stat. 2478." 39 U.S.C. § 3007, states: "(a) In preparation for or during the pendency of proceedings under Sections 3005 and 3006 of this Title, the United States District Court in the district in which the defendant receives his mail shall, upon application therefor by the postal service and upon the showing of probable cause to believe either section is being violated, enter a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure directing the detention of the defendant's incoming mail by the postmaster pending the conclusion of the statutory proceedings and any appeal therefrom. The district court may provide in the order that the detained mail be open to examination by the defendant and such mail be delivered as is clearly not connected with the alleged unlawful activity. An action taken by a court hereunder does not affect or determine any fact at issue in the statutory proceedings. "(b) This section does not apply to mail addressed to publishers of newspapers and other periodical publications entitled to a periodical publication rate or mail addressed to the agents of those publishers. Pub.L. 91-375, August 12, 1970, 84 Stat. 747." In interpreting the aforementioned statutes, the United States Court of Appeals, First Circuit, held in the case of United States v. International Term Papers, Inc., 477 F.2d 1277 (1973), as follows: ". . . We can see no basis for a policy which would allow a 3007 injunction against one who mails false advertising to a prospective buyer but would forbid an injunction against one who mails false advertising and fraudulent selling advice to sales representatives for use in calling on prospective buyers. Nor is the language of 3005 limited to one who falsifies to another and subsequently receives money. Unlike the language of similar statutes aimed at preventing the use of the mails for fraudulent purposes, neither the timing, the source, nor the target of the false representation is here specified. The critical requirement here is that the scheme contemplate the receipt of money through the mail generated by means of false representations. That the student first pays for that which will enable him to make a subsequent false representation to his college does not affect the means-end relationship. That it is not the seller but the buyer who makes the false representation seems equally irrelevant. The reality is that the appellees receive money through the mail by means of assisting students to make false representations to universities. "Encyclopedia Britannica could not be enjoined from distributing its sets simply because a student purchaser submits its essay on Jefferson as his own term paper. For the statute to apply to a sender, where a third party is deceived by a recipient, the sender must contemplate a 'scheme' which involves a misrepresentation based on the materials which he sends. In such a case, therefore, the intent of the seller, in the sense of his knowing cooperation in a scheme, is, by the words of the statute, a necessary prerequisite for injunctive remedy — a prerequisite obviously present in this case." (Emphasis added) It is, therefore, apparent that, should the postal service find that the afore-described elements exist, the stated sanctions may be imposed. It is, therefore, the opinion of the Attorney General that, although it is not per se illegal, under Oklahoma law, for an individual, association, corporation, or other organization to advertise on State college and university campuses, solicit, and sale to students certain services of the type that accomplishes assignments given the student by the instructor which are intended for the student himself to accomplish as part of the teaching-learning process, such sale of "research" or "term papers" to the students, with knowledge that the students intend to submit the papers for academic credit to the institutions under false representations that the term papers are the work product of the students, may, under some circumstances, be in violation of the laws of a sister State, or may be in violation of the federal criminal mail fraud statute. Further, such conduct may constitute an interference with the contractual obligations of the student and university and may constitute a violation of the federal civil mail fraud statutes. (LARRY D. BARNETT)