837 F.2d 477
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lethea WATKINS, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 87-1135.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1988.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and HIGGINS, District Judge.*
 PER CURIAM:
 
 
 1
 Appellant claims error in her conviction for mail fraud, 18 U.S.C. Sec. 1341. For the reasons set out below we affirm the conviction.
 
 I.
 
 2
 Lethia Watkins and Richardson Lacy, husband and wife, were indicted for mail fraud based on the following actions. In April 1984 Lacy bought a gray 1982 Cadillac Cimarron, which was titled in his name. Watkins insured the car with State Farm Insurance Co. in her name.
 
 
 3
 In the Spring of 1985 Watkins contacted her former neighbor, James Ferguson, to ask him if he knew anyone who would do "insurance jobs." This involved hiring someone to get rid of the car so that Watkins could claim a theft loss with State Farm. Ferguson found James Starks, who said he would get rid of the car for Watkins, if she would park it in front of Ferguson's house.
 
 
 4
 On May 7, Watkins had her brother park the car in front of Ferguson's house. Ferguson checked to make sure the car was unlocked and called Starks to come and pick it up. Starks showed up early May 8 with a man who said he would buy the car from Ferguson after it was "stolen." This man was Cary Thornton, an undercover agent with the FBI. Thornton paid Ferguson $250 for the car and drove it off later that same day.
 
 
 5
 Ferguson called Watkins May 8 and told her he had gotten rid of the car, but told her to wait a few days before reporting it stolen. Lacy called Detroit police on May 11 and reported that his car had been stolen from his driveway on May 10. Watkins called State Farm to collect insurance proceeds on May 14.
 
 
 6
 The claims adjuster assigned to the claim was Jesse Mitchell. Mitchell testified that on May 17 he instructed his secretary to send Watkins a letter and an affidavit of theft, which would have to be completed before she could get any money. On the same day, Mitchell also told his secretary to send a request for a theft report from the Detroit Police Department, and an inquiry to the National Automobile Theft Bureau (NATB), asking that State Farm be notified if the car was recovered.
 
 
 7
 NATB responded to this letter by return mail. However, Watkins personally came into the office on June 10 to inquire what was holding up her claim. She stated that she had never received any mail from State Farm, and that this was probably because she had moved recently. She got a new affidavit, partially filled it out on the spot, and returned to the office when it was fully complete. Lacy and Watkins came in the next day to sign some more paperwork and received their check from State Farm.
 
 
 8
 Watkin's case went to trial and was tried before the bench. At the conclusion of the government's case, she moved for acquittal on the grounds that the government did not prove beyond a reasonable doubt that she had used the mail in furtherance of her scheme. This appeal followed.
 
 II.
 
 9
 A conviction for mail fraud requires proof of "(1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the scheme." United States v. Castile, 795 F.2d 1273, 1278 (6th Cir.1986); 18 U.S.C. Sec. 1341 (1984). A conviction for use of the mails in executing a fraudulent scheme can be sustained when the defendant "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." Pereira v. United States, 347 U.S. 1, 8-9 (1954); Castile, 795 F.2d at 1278. It has long been held that the mailing need not be between the perpetrator and the victim to satisfy this requirement: as long as it furthers the scheme, a mailing between third parties will suffice. United States v. International Term Papers, Inc., 477 F.2d 1277 (1st Cir.1973); Stewart v. United States, 300 F. 769 (8th Cir.1924); Ader v. United States, 284 F. 13 (7th Cir.1922), cert. denied, 260 U.S. 746 (1923).
 
 
 10
 It is clear here that Watkins herself did not mail anything in connection with her scheme. The thrust of her appeal is that the court's verdict is erroneous because there was not enough evidence to prove that anything was sent by State Farm in connection with her fraudulent claim. In reviewing the district court's decision in the face of an insufficient evidence claim, we must determine if substantial evidence will support the verdict when the evidence is viewed in light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Meyers, 646 F.2d 1142 (6th Cir.1981). Viewing the evidence from this perspective, we believe the conviction should be upheld.
 
 
 11
 Watkins' principal argument is that Mitchell was unable to say with certainty that any letter was sent to her on May 17. Mitchell admitted on cross examination that it was possible that no letter was ever mailed to Watkins because he himself had not sent the letter; he only told his secretary to do so. Because Mitchell stated it was possible that no letter was sent, and because Watkins came in on June 10 and stated she had not heard from State Farm, Watkins claims the government's evidence is inconclusive and cannot constitute evidence beyond a reasonable doubt of this element, based on United States v. Leon, 534 F.2d 667, 677 (6th Cir.1976).
 
 
 12
 The district court was willing to find Mitchell's statement that he had told his secretary to send Watkins a letter conclusive evidence of the mailing element, in part because of the presumption of mailing applied when a business mails letters as a matter of course. See United States v. Goss, 650 F.2d 1136, 1343 (5th Cir.1981); United States v. Huber, 603 F.2d 387, 399 (2d Cir.1979), cert. denied, 445 U.S. 927 (1980). Mitchell testified that sending a cover letter and an affidavit of theft to the insured was State Farm's normal procedure. He also produced a logbook indicating that his secretary had sent the information on May 17. Further, a letter in connection with the claim, which Mitchell ordered sent to NATB the same day, actually was sent because a response was received. Against this, Watkins can show only that she came in on June 10 without having received the letter. However, she stated even this may have been because she moved to a new address.[1] We believe this evidence alone establishes the mailing requirement. This is itself enough evidence to allow a reasonable jury to accept it as adequate to support a conviction, thus it alone could constitute substantial evidence under the Glasser standard.
 
 
 13
 There is also undisputed evidence which also supports the mailing element. Mitchell stated that he instructed his secretary to send two other letters in connection with Watkins' claim; one to the Detroit Police Department for a copy of their report, and one to NATB to ask that State Farm be informed if Watkins' car reappeared. This evidence was not contested. Further, conclusive proof that at least one of these letters was sent is shown by the fact that NATB responded to State Farm's request.
 
 
 14
 This undisputed evidence overcomes Watkins' contention because it is clear that these mailings satisfy the third prong of Castile by being in furtherance of the fraud. In order to satisfy this requirement the mailings must be "closely enough related to the schemes" to be incident to an essential part of it. United States v. Maze, 414 U.S. 395, 399 (1974); United States v. Castile, 795 F.2d 1273, 1278 (6th Cir.1986) (quoting Pereria v. United States, 347 U.S. 1, 8 (1954)). Watkins' goal was to recover benefits from State Farm for the "theft" of her car. Before State Farm would pay any benefits, however, Mitchell stated it always required a police report and notification of NATB. These mailings, therefore, are incidental to and related to the success of Watkins' scheme. Therefore, it is evident that the mails were used in furtherance of the scheme.
 
 III.
 
 15
 Because the evidence was adequate to convict Watkins, her conviction is accordingly AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 We note in passing that a letter sent to a wrong address will constitute use of the mails for purposes of a conviction. Aycock v. United States, 62 F.2d 612 (9th Cir.1932), cert. denied, 289 U.S. 734 (1933)